## In re Application of Anthony F. Pagano
## (13204)

Peters, C. J., Healey, Shea, Callahan, Glass, Covello and Hull, Js.

Argued February 11—decision released May 10, 1988

*John L. Giulietti,* pro se, the appellant.

*F. Mac Buckley,* for the appellee (Anthony F. Pagano).

Covello, J. This is an appeal by John L. Giulietti, an attorney at law, from a judgment authorizing the return to practice of a suspended fellow attorney, Anthony F. Pagano. The issues presented are: (1) whether the appellant Giulietti had the right to participate in the proceedings below; and (2) whether the evidence presented was sufficient to support the conclusions reached by the Superior Court. We answer both questions in the affirmative and find no error.

Examination of the record discloses that on May 19, 1984, Anthony F. Pagano, an attorney at law, was involved in an automobile accident. An occupant of a second vehicle was killed.

On August 29, 1984, Pagano pleaded nolo contendere to charges of misconduct with a motor vehicle. General Statutes § 53a-57.[1] The court found him guilty and imposed a sentence of one year, execution suspended, to be followed by a period of probation for two years. The court also imposed a fine of $500 and ordered 150 hours of community service.

On November 5, 1984, the grievance committee for the Hartford-New Britain judicial district filed a presentment pursuant to Practice Book § 31,[2] seeking a rule to show cause why Pagano should not be disbarred or otherwise disciplined by reason of his unacceptable behavior in connection with the automobile accident.

On October 1, 1985, following a hearing on the presentment, the court, *Shaughnessy, J.,* filed a memorandum in which it found that, after the accident, Pagano had made statements "to the investigating officer that were both misleading and untrue" and that

---

[1] General Statutes § 53a-57 provides: "(a) a person is guilty of misconduct with a motor vehicle when, with criminal negligence in the operation of a motor vehicle, he causes the death of another person.

"(b) misconduct with a motor vehicle is a class D felony."

[2] Practice Book § 31 then provided in relevant part: "Presentment of attorneys for misconduct not occurring in the actual presence of the court shall be made by written complaint of the grievance committee . . . . Upon the filing of such complaint a rule to show cause shall issue to the defendant . . . . Unless otherwise ordered by the court, such complaints shall be prosecuted by local bar counsel . . . and upon such hearing the court shall make such lawful order as may to it seem just. Such complaints shall be proceeded with as civil actions."

This section was thereafter amended on June 21, 1985, January 24, 1986, and June 23, 1986. Presentments now originate upon the complaint of the statewide grievance committee and, unless otherwise ordered by the court, are prosecuted by the chief attorney for presentments or his or her designee.

"[t]here were also questions raised by the investigation concerning the attorney's abuse of alcohol and drugs." The court "was satisfied that prior to May 19, 1984, Attorney Pagano's reputation for both integrity and competence was a good one." The court concluded, however, that the attorney was then "unfit to continue the practice of law." The court entered an order of indefinite suspension until "he [Pagano] satisfies the court that he has conquered whatever problems he may have now or may have had in the past with substance abuse and that his mental and emotional state has improved to the extent that they will not interfere with his ability to practice law."

On October 10, 1986, Pagano filed an application for reinstatement to the bar. In accordance with Practice Book § 36,[3] the matter was referred to the standing committee on recommendations for admission to the bar for the Hartford-New Britain judicial district.[4] On January 6, 1987, the standing committee conducted a public hearing and, on April 1, 1987, filed its report with the court. The report concluded that "having been satisfied by clear and convincing evidence that Anthony F. Pagano is presently a fit and safe person to engage in the practice of law, the Committee recommends to

---

[3] Practice Book § 36 then provided in relevant part: "Any application for reinstatement . . . shall be referred, by the court to which it is brought, to the standing committee on recommendations for admission to the bar that has jurisdiction over the judicial district court location in which the applicant was suspended. . . . The standing committee . . . shall investigate the application, hold hearings pertaining thereto and render a report with its recommendations to the court. The court shall thereupon inform the chief justice of the supreme court of the pending application and report, and the chief justice shall designate two other judges of the superior court to sit with the judge presiding at the session. Such three judges, or a majority of them, shall determine whether the application should be granted."

[4] For purposes of this reference, the standing committee was reconstituted and enlarged at the direction of Chief Justice Ellen A. Peters. Its members included Richard C. Willard, chairman; Marilyn P. Seichter, secretary; Maurice T. Fitzmaurice; Maurice R. Gersten; and Milton Krevolin.

the Court that Anthony F. Pagano be reinstated to the practice of law."

On May 5, 1987, Giulietti filed a motion "to be made a party" or, in the alternative, sought "permission to intervene to oppose the application for reinstatement." On May 8, 1987, the court, *Aronson, Quinn* and *Stoughton, Js.,* denied the appellant's motion. The court thereafter allowed interested parties to comment on the committees' recommendations. Giulietti appeared and was fully heard. On June 19, 1987, the three judge panel issued its decision ordering Pagano's reinstatement as of October 1, 1987. This appeal followed.

## I

Giulietti first contends that the court erred in denying his motion "to be made a party" or in the alternative "grant him permission to intervene" in the proceedings. We disagree.

" 'The proceeding to disbar [or suspend] an attorney is neither a civil action nor a criminal proceeding, but is a proceeding *sui generis,* the object of which is not the punishment of the offender, but the protection of the court.' *In re Bowman,* 7 Mo. App. 569 [1879]." *State* v. *Peck,* 88 Conn. 447, 453, 91 A. 274 (1914). The proceeding is "an investigation by the court into the conduct of its . . . own officers . . ."; *Fairfield County Bar* v. *Taylor,* 60 Conn. 11, 15, 22 A. 441 (1891); and is "one undertaken 'for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them.' *Ex parte Wall,* 107 U.S. 265, 288, 2 Sup. Ct. Rep. 569 [27 L. Ed. 552 (1882)]; *Penobscot Bar* v. *Kimball,* 64 Me. 140, 147 [1875]; *Boston Bar Association* v. *Greenhood,* 168 Mass. 169, 183, 46 N.E. 568 [1897]; *In re Bowman,* [supra]." *State* v. *Peck,* supra, 452.

"There are no adversary parties [to grievance proceedings] in the technical legal sense, although our reports contain cases which, in their titles, carry as parties not only the names of the petitioners [or respondents] but those of bar examining committees and grievance committees. *In re Application of Dodd*, [131 Conn. 702, 705, 42 A.2d 36 (1945)]; *Grievance Committee* v. *Broder*, 112 Conn. 263, 265, 152 A. 292 [1930]." *Heiberger* v. *Clark*, 148 Conn. 177, 182, 169 A.2d 652 (1961).

Since there are no adversary parties in grievance proceedings, it was not necessary for Giulietti to move for admission as a party in order to participate in the proceedings. The trial court, therefore, correctly denied the motion in which he sought to do so while, equally correctly, afforded him the opportunity to be heard thereafter.

An ancillary question remains as to whether the appellant, as an attorney, may be characterized as a "party aggrieved by the decision of the court"; Practice Book § 4000;[5] thereby qualifying him to pursue an appeal. We answer in the affirmative.

"The end result of the [grievance] proceedings is in the nature of a judgment from which an appeal lies to this court. *Heiberger* v. *Clark*, supra, 183; *In re Application of Dodd*, supra, 707; *O'Brien's Petition*, 79 Conn. 46, 59, 63 A. 777 [1906]." *In re Application of Courtney*, 162 Conn. 518, 522, 294 A.2d 569 (1972).

We have earlier concluded that "every member of the bar has an interest in the admission of an attorney upon motion without examination." *In re Application of Dodd*, supra, 705. We see no reason why this should not also be the case in connection with petitions by attorneys who seek readmission following suspension.

---

[5] Practice Book § 4000 provides in relevant part that "[i]f a party is aggrieved by the decision of the court . . . that party may appeal from the final judgment . . . ."

"Attorneys have a franchise which is regarded as a property right. *O'Brien's Petition,* [supra, 55]." *In re Application of Dodd,* supra. This property right gives the attorney "an interest which he had a right to protect from anyone seeking admission to the bar who he believes lacks some essential prescribed qualification therefor. See 5 Am. Jur. [Attorneys at Law] 272, § 18." *In re Application of Dodd,* supra, 706. While this proposition has been previously limited to attorneys in active practice within the judicial district where the proceeding is pending; id.; we are persuaded in this era of high mobility and instantaneous communication that this right in fact extends to all attorneys within this geographically compact state.[6]

## II

Thus armed with standing to pursue this appeal, Giulietti next argues that the evidence presented to the standing committee was insufficient to support the committee's conclusion that the petitioner was "presently a fit and safe person to engage in the practice of law." He claims that: (1) the substances being abused should have been specifically identified; (2) the petitioner's treating physician should have been physically present to testify at the committee hearing; and (3) there was inadequate evidence that the petitioner was no longer drug dependent. We do not agree.

The October 1, 1985 memorandum that ordered the petitioner's suspension made no finding that he was in fact a drug dependent person. The conclusion that he was "unfit to continue the practice of law" was premised in part, however, on the court's finding that

[6] We note, however, that failure physically to appear and contest the proposition advanced in a sui generis proceeding such as this constitutes an implicit consent to the judgment that thereafter follows, so that an attorney who has not appeared and participated, is not aggrieved. See, e.g., *Cannavo Enterprises, Inc. v. Burns,* 194 Conn. 43, 46, 478 A.2d 601 (1984).

there were "questions raised concerning substance abuse (both alcohol and drugs) . . . ."[7]

In support of his application for reinstatement, the petitioner offered the expert testimony of Nicholas J. Palermo, an osteopathic doctor, who was the petitioner's personal physician and the director of a medical testing laboratory. Palermo testified that from April, 1986, until January, 1987, he had supervised random drug testing of the petitioner and had found him free of drugs. The substance screening included tests for alcohol, cocaine, marihuana, amphetamines and barbituates among other drugs. Although the standing committee chairman had invited anyone present to cross-examine those testifying, no one challenged the sufficiency of the screening procedures[8] nor Palermo's conclusion that the petitioner was not now a substance abuser.[9]

---

[7] The April 1, 1987 standing committee report, issued eighteen months after the suspension memorandum, found specifically that investigation at the scene of the fatal automobile accident disclosed an odor of alcohol on the petitioner's breath, but not sufficient to declare him under the influence. At the request of state police, the petitioner performed and passed alcohol field tests. He refused to provide samples of body fluids. A small quantity of marihuana residue and a pipe were found in the petitioner's car a few days following the fatal collision. The petitioner stated to the standing committee that following his mother's death in September, 1983, he "began to use alcohol and drugs," and that "[i]n retrospect, it was a severe problem that only intensified the depressed state I was in." Abraham L. Halpern, a consulting psychiatrist who testified in the petitioner's behalf, stated that at the time of the automobile accident in May, 1984, "[t]his man was using drugs not prescribed by his physician. He was using alcohol, not constantly, but frequently enough to make this a significant problem."

[8] Examination of the record discloses that Giulietti did not participate in the evidentary proceedings conducted by the standing committee. He first appeared in opposition to the petitioner's application at the hearing before the three judge panel that considered the standing committee's recommendation.

[9] While our analysis describes only the most objective evidence submitted to the standing committee on the question of substance abuse, the record discloses sixteen character references, letters and the testimony of

In further support of his claim of present fitness the petitioner offered the testimony of Abraham L. Halpern, a consulting psychiatrist who specializes in the treatment of professionals. In addition to his own observations of the petitioner on January 9, 1986, in which he found "no signs of mental illness," Halpern enlisted the consultative services of Eileen C. Bloomingdale, Ph.D., a psychodiagnostician who administered a seven-hour series of psychological tests to the petitioner. Bloomingdale concluded that the petitioner's "mental and emotional state is such that he is able to fully attend to his responsibility to law clients and fulfill such responsibility. There is no psychological impediment to Mr. Pagano resuming the practice of law."

Halpern examined the petitioner further on March 27, 1986, and "again found him to be entirely free of mental illness." He consulted with the petitioner's treating psychiatrist, Walter A. Borden. He also consulted with Carolyn Caputo, a family counseling psychotherapist, who had conducted joint counseling with the petitioner and his wife. He reviewed police reports of the May 19, 1984 automobile accident, the report of senior probation officer Dennis R. Burke, the petitioner's probation supervisor, and the written report of family counselor Carolyn Caputo. On the basis of his own observations, reviews of reports and consultations with others, Halpern concluded that "Mr. Pagano is entirely fit, mentally and emotionally, to resume the practice of law."

The appellant correctly points out that Borden, the petitioner's treating psychiatrist, did not personally testify. He did, however, submit a report in which he disclosed that he had treated the petitioner from May, 1984, through his discharge on September 11, 1986. In

---

eighteen witnesses who spoke in favor of readmission, many of whom corroborated Palermo's conclusion.

view of Halpern's extensive analysis, Borden's position was only duplicative as he was of the view that "[a]t [no] time did I find problems, from a psychiatric point of view, that would affect or impair his ability to practice law."[10] (Emphasis added.) In view of Borden's perception that the petitioner had never been psychologically unfit to practice, it is evident that his personal testimony would only have corroborated Halpern's conclusion of present fitness to resume the practice of law.

The scope of our review in cases of this nature is a limited one. "All of our cases agree that the trial court has a wide discretion in the premises. [*Grievance Committee* v. *Broder,* 112 Conn. 263, 266, 152 A. 292 (1930)]; *State* v. *Peck,* [supra, 460]; *Grievance Committee* v. *Ennis,* 84 Conn. 594, 602, 80 A. 767 [1911]; *In re Durant,* [80 Conn. 140, 149, 67 A. 497 (1907)]. As is stated in *Fairfield County Bar* v. *Taylor,* supra, 13, 'A revising tribunal . . . would feel the delicacy of interposing its authority, and do so only in a plain case.' In *Hayward* v. *Plant,* 98 Conn. 374, 382, 119 A. 341 [1923], the general rule is stated to be: 'Judicial discretion is always a legal discretion. Its abuse will not be interfered with on appeal to this court except in a case of manifest abuse and where injustice appears to have been done.' " *Grievance Committee* v. *Nevas,* 139 Conn. 660, 666, 96 A.2d 802 (1953).

Although our review of grievance proceedings is restricted, we recognize the seriousness of the interests that we must safeguard. We have a continuing duty

---

[10] Borden's report of January 5, 1987, stated: "I treated Anthony Pagano from May of 1984 through September 11, 1986, at which point his treatment was terminated as no longer necessary. The basic issues stemmed from problems of anticipatory grief and grief/depression, relating to his mother's long illness and death. These problems were manifested in chronic depression and marital conflicts. At not [sic] time did I find problems, from a psychiatrist [sic] point of view, that would affect or impair his ability to practice law. Sincerely, Walter A. Borden, M.D."

"to make it entirely clear that the standards of conduct, nonprofessional as well as professional, of the members of the profession of the law in Connecticut have not changed, and that those standards will be applied under our rules of law, in the exercise of a reasonable discretion . . . ." *Grievance Committee* v. *Broder,* supra, 278.

"An attorney at law admitted to practice, and in the exercise of the right thus conferred to act as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. As important as it is that an attorney be competent to deal with the oftentimes intricate matters which may be entrusted to him, it is infinitely more so that he be upright and trustworthy." *State* v. *Peck,* supra, 450.

The readmission process following the indefinite suspension of an attorney must focus, however, on the issue of *present* fitness to practice. Id., 457; *Grievance Committee of the Bar of New Haven County* v. *Sinn,* 128 Conn. 419, 422, 23 A.2d 516 (1941). Character is not measured in the crucible of a single instance and the assessment for reentry appropriately centers on the question of present fitness. Our review of the record discloses an abundance of credible evidence before the standing committee to support its conclusion of the petitioner's current fitness to practice law.

There is no error.

In this opinion the other justices concurred.