[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a presentment by the Statewide Grievance Committee seeking to have this court discipline the Respondent for violation of certain Rules of Professional Conduct.
A presentment proceeding "is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object CT Page 11736 of which is not the punishment of the offender, but the protection of the court." Statewide Grievance Committee v.Rozbicki, 219 Conn. 473, 483 (1991), cert. denied, 502 U.S. 1094,112 S.Ct. 1170, 117 L.Ed.2d 416 (1992). The function of the grievance committee is to initiate presentment and thereafter a de novo evidentiary proceeding is carried out by the court, with whom rests the ultimate responsibility to determine whether an act or acts of misconduct occurred. Statewide Grievance Committeev. Presnick, supra, 215 Conn. 167. "In presentment proceedings, the Statewide Grievance Committee must prove by clear and convincing evidence that the attorney misconduct it alleges has occurred." Statewide Grievance Committee v. Whitney,227 Conn. 829, 838 (1993). In a grievance proceeding, the standard of proof applicable in determining whether an attorney has violated the [Rules] of Professional [Conduct] is clear and convincing evidence . . . The burden is on the statewide grievance committee to establish the occurrence of an ethics violation by clear and convincing proof." (Citations omitted; internal quotation marks omitted.) Lewis v. Statewide Grievance Committee, 235 Conn. 693,698, 669 A.2d 1202 (1996); see Practice Book § 2-38(f). "[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the fact [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted).Wildwood Associates. Ltd. v. Esposito 211 Conn. 36, 42, 557 a.2d 1241 (1989).
On December 6, 1987 Amos Joyner, Sr. died in a truck motor vehicle accident giving rise to a cause of action in favor of the Estate of Amos Joyner, Sr. The Respondent Samuel E. Dixon, Jr. was appointed administrator of the Estate of Amos Joyner, Sr. Amos Joyner, Sr. left his four children as the only heirs at law of his estate. His children are: Amos Joyner, Jr., Viggio Joyner, Angelo Joyner and Antonett Joyner.
The Respondent was retained subject to a 1/3 contingency fee agreement, to pursue a wrongful death action on behalf of the Estate of Amos Joyner, Sr. This wrongful death action was resolved and settled in the gross amount of $150,000.00. The settlement checks totaling $150,000.00 were deposited to a CT Page 11737 checking account entitled "Law Offices of Samuel E. Dixon, Jr., Trust Account which bore the number 01-0725-7455. The Respondent was entitled to a $50,000.00 legal fee. However, the Respondent did not deduct his fee from this account in any identifiable manner. Additionally, the Respondent was entitled to be reimbursed for costs relative to the civil action in the amount of $4,670.00 and the estate was liable for probate costs and fees in the amount of $4,539.39. Reimbursement of the costs relative to the civil action and the probate estate were not deducted in any identifiable manner. Further, distribution of the net distributable share of the estate to the respective heirs is not shown in any identifiable manner.
The Respondent created an accounting quagmire which prevented a reconciliation of the total monies in the amount of $150,000.00 as received by the Respondent. The Respondent closed accounts, transferred balances to various accounts, criss-crossed various account, commingled his own funds with that of his client's funds, cashed checks on clients funds accounts with checks on his own office account and, made unintelligible or illegible memos on various checks. All the foregoing prevented Bruce Felding CPA from tracing all monies and reconciling the various accounts in which the Respondent dealt.
Petitioner has charged Respondent in violation Rule 1.15 of the Rules of Professional Conduct. Rule 1.15 provides as follows:
 "(a) a lawyer shall hold property of clients or third persons that is in a lawyers possession in connection with a representation separate from the lawyers own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safe guarded. Complete records of such accounts funds and other property shall be kept by the lawyer and shall be preserved for such period of time as may be required under applicable law after termination of representation."
Connecticut Practice Book Section 2-27(a) also provides as follows:
 "(a) Consistent with the requirement of Rule 1.15 of the Rules of Professional Conduct each lawyer or firm shall CT Page 11738 maintain, separate from the lawyer's or the firm's personal funds, one or more accounts accurately reflecting the status of funds handled by the lawyer or firm as fiduciary or attorney, and shall not use such funds for any unauthorized purpose."
The petitioner utilized the services of H. Bruce Fielding a certified public accountant licensed to practice in the State of Connecticut. Both the Petitioner and Respondent stipulated that H. Bruce Fielding was an expert in his field of accounting. It was the uncontroverted testimony of Bruce Fielding that the Respondent commingled his funds with money belonging to the Estate of Amos Joyner, Sr. Mr. Fielding testified that it was "absolutely the fact the defendant commingled his funds with the Estate of Amos Joyner, Sr." Through various and numerous checks the Respondent withdrew monies from the various trust accounts to his own personal use and behalf. In addition the Respondent also commingled money from the Estate with his office operating account by paying a estate bill such as the funeral bill in the amount of $3,591.84 from the Respondent office operating account.
In the course of the administration of the Estate of Amos Joyner, Sr the Respondent submitted an inventory showing an inventory of $95,496.23. Thereafter, under date of April 17, 1989, the Respondent submitted a final accounting showing monies on hand to be distributed to the four heirs in the net gross amount of $90,956.84. This final accounting was approved by the New Haven Probate Court on May 26, 1989 and distribution to each of the heirs in the amount of $22,739.21 was ordered by the Probate Court.
The petitioner charges the Respondent with a violation of Rule 1.15(b) of the Rules of Professional Conduct and also a violation of Connecticut General Statutes Section 45a-431(b) to properly document the distribution of the estate. Rule 1.15(b) reads as follows:
 "(b) upon receiving funds or other property which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client a lawyer shall promptly deliver to the client or third person any funds or other property the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding CT Page 11739 such property."
General Statute Section 45a-431(b) reads as follows:
 "(b) Court to order fiduciary to distribute estate. The court shall order the administrator or other fiduciary charged with the administration of the estate to deliver possession of or pay over the intestate estate and the shares in each testate estate so far as the will may leave the same indefinite and necessary to be defined to the person or persons entitled thereto in the proportions provided by law, or, if distributors are appointed or mutual distribution is filed, as provided in section 45a-433, or if disinterested persons are appointed to make division or an agreement is filed, as provided in section 45a-434, the court shall order the fiduciary of the estate to deliver possession of or pay over the same in accordance with the division made by such distributors or mutual distribution or agreement as the case maybe. The fiduciary shall take proper receipts for any such delivery or payment."
Respondent did not prepare any receipts or documentation reflecting that on or within a reasonable period of time from May 26, 1989 the Respondent distributed such sums as the four Joyners were entitled, nor is there any documentation to reflect that the four Joyners authorized the Respondent to maintain, retain or manage their respective inheritances. This lack of documentation is a violation of the Respondent's ethical and statutory obligations.
During the interim between March 21, 1989 to May 26, 1989, the Respondent deducted approximately $10,452.79 from the Estate account. Further, the Respondent when seeking final approval for the distribution of the estate, Respondent did not disclose such deductions to the probate court. Further, by a probate court document entitled a Certificate for Surety the probate court certifies as follows: "This Certifies that the above-named fiduciary has accounted to this court in accordance with the law and has made sworn return that all monies and properties received for payment and distribution have been paid over and distributed to the persons legally entitled thereto and has complied with all orders of this court relating to the above matter. This court finds that the Respondent did not pay over all monies and property and make distribution to the persons legally entitled thereto and further did not comply with all the orders of the CT Page 11740 probate court relating to the Estate of Amos joiner, Sr. In addition to the violation of rule 1.15(b) and Connecticut General Statutes Section 45a-431(b), the petitioner also charges the Respondent with a violation of rule 8.4(c) of the Rules of Professional Conduct, which reads
 It is professional misconduct for a lawyer to: . . . "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . ."
In his accountings, the Respondent misrepresented to the probate court that funds were being taken from the Estate of Amos Joyner, Sr. to the benefit of the Respondent as well as some of the heirs. This constitutes professional misconduct on the part of the Respondent and that such conduct and activities are dishonest, fraudulent, deceitful and misrepresent the actual facts of the matter. Further, this court finds that the Respondent failed to notify the individual heirs of the Estate of Amos Joyner, Sr. that funds were available for distribution to them on or about May 26, 1989 or shortly thereafter.
Further compounding the Respondent's professional misconduct is that he issued checks #796 in the amount $11,000.00 and #797 in the amount of $8,500.00 against insufficient funds to negotiate both checks contemporaneously. Check #797 was dated October 20, 1990 payable to Viggio Joyner with a memo notation that it was Amos final payment in the amount of $8,500.00. Check #796 was dated October 22, 1990 payable to Viggio Joyner in the amount of $11,000.00.
Despite the four Joyners' entitlement to distribution of their father's estate by order of the Probate Court on May 26, 1989, the Respondent continuously and frequently put off the Joyners in their numerous efforts and attempts to ascertain the status of the estate of Amos Joyner, Sr. and the distribution therefrom. Respondent did not keep the Joyners fully informed regarding the status of their sums. In fact he actually converted some of such sums. The Respondent misled the Joyners into believing that their entire sums were being safeguarded by the Respondent and properly and accurately being accounted for by the Respondent. This conduct violated Rule 1.4 of the Rules of Professional Conduct on Communication, Rule 1.3 on Diligence and Rule 8.4(c) regarding Deceit, Dishonesty and Misrepresentation.
Rule 1.4 reads as follows: CT Page 11741
 "(a) a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. (b) A lawyer shall explain the matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."
Rule 1.3 reads as follows:
 "A lawyer shall act with reasonable diligence and promptness in representing a client."
Rule 8.4(c) reads as follows:
 "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . ."
During the course of this trial affidavits signed by each Joyner child were introduced. Although the Respondent believes that these affidavits exonerate him from any professional misconduct this court concludes to the contrary as these affidavits read and interrupted in their true light merely reinforces this court's conclusion that the Respondent is guilty of professional misconduct. Firstly, these affidavits are blatantly self-serving and were caused to be drawn by the Respondent or at his urging. They contain misrepresentations of fact and contain facts unknown or facts that would have been unknown to the affiant and were drawn for the singular purpose of use in the probate court proceeding or were drawn for the singular purpose of exonerating him from any misconduct. These affidavits lack credibility.
As previously stated the Respondents check writing memos, record keeping, bank reconciliation and record retention were contrary to accepted accounting principles and practices. Practice Book Section 27A reads in pertinent part:
 "(a) Consistent with the requirement of Rule 1.15 each lawyer or law firm shall maintain, separate from the lawyer's or firm's personal funds, one or more accounts accurately reflecting the status of funds handled by the lawyer or firm as fiduciary or attorney, and shall not use such funds for any unauthorized purpose. CT Page 11742
 (b) Each lawyer or firm shall at all times maintain such books of account as may be necessary to identify the funds on deposit in the accounts specified in paragraph (a) and shall account at least quarterly, reconcile the bank statements for such accounts with such books of account and shall maintain the statement of reconciliation on file . . .
(d) Violation of this section shall constitute misconduct."
The Respondent failed to maintain accurate accounts, records, reconciliation and retain such records, accounts and reconciliations which constitutes professional misconduct.
During the course of the Respondents representation of the Estate of Amos Joyner, Sr., Angelo Joyner was arrested and charged with certain criminal violations during the spring of 1989. The Respondent initially sought to be retained by Angelo Joyner to defend Angelo Joyner's criminal charges and in fact Mr. Angelo Joyner did initially engage the Respondent as criminal defense attorney. However, Angelo Joyner changed his mind and rescinded the retention of Respondent as criminal defense attorney. Shortly after Angelo Joyner rescinded the agreement to have the Respondent act as criminal defense attorney on his behalf, the Respondent visited Angelo Joyner in jail and urged him to change his mind explaining that any monies due Angelo Joyner from the Estate of Amos Joyner, Sr. could only be used for legal fees to pay the Respondent or satisfy any civil claim in a civil action institute by Laura Bergman, the alleged victim of Angelo Joyner's alleged criminal activities. This scenario result in professional misconduct by the Respondent in three aspects: (a) Respondent's representations to Angelo Joyner regarding the status of Angelo Joyner's inheritance sums was false (b) the Respondent created a conflict of interest over the money matter in order to earn a fee (c) the Respondent admitted that his experience in handling serious criminal matters was inadequate to provide the Angelo Joyner with a competent criminal defense. Again, this court finds that the Respondent has been guilty of professional misconduct based on the foregoing.
A civil lawsuit was instituted by Laura Bergman against Angelo Joyner. arising out of the civil aspects of the alleged criminal conduct of Angelo Joyner in that Laura Bergman was the alleged victim of his criminal activities. Said civil action sought a prejudgment remedy during the pendency of the action. CT Page 11743 The Respondent represented to Laura Bergman's counsel that he did not have any money in his possession or control to effect a prejudgment remedy that was obtained. Despite obtaining a prejudgment remedy, the attorney for Laura Bergman declined to execute the prejudgment remedy based on the Respondent's professional representations that he was without funds that could be garnished and/or executed upon. Again, this is a clear violation of rule 8.4c which again reads: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."
Based on the foregoing totality of the facts and circumstances of this case, this court concludes by clear and convincing evidence that the Respondent has violated the following Rules of Professional Conduct namely, 1.15; 1.15(b); 1.3; 1.4; 1.7(b); 8.4(c) and also violated Connecticut Practice Act Section 2.27(a) and Connecticut General Statutes Section45a-431(b) in one or more of the following respects (a) commingling his own funds with that of funds belonging to the Estate of Amos Joyner, Sr. or funds belonging to the individual heirs of Amos Joyner, Sr. (b) appropriating to himself money representing payment of legal fees without prior authorization, (c) postdating bills for legal representation after the fact, (d) failure to maintain accurate accounting records in accordance with accepted accounting practices, (e) failure to maintain separate accounts for and on behalf of the Estate of Amos Joyner, Sr. and/or individual heirs of Amos Joyner, Sr., (f) failure to accurately reflect the status of funds handled by Respondent on behalf of the estate of Amos Joyner, Sr. or the heirs of the Estate of Amos Joyner, Sr., (g) failure to promptly distribute the distributable shares of the Estate of Amos Joyner, Sr., (h) failure to account to the Probate Court for certain deductions and expenses taken by the Respondent, (i) the failure to be candid, truthful and honest with the attorney representing Laura Bergman regarding prejudgment remedy garnishment, (j) failure to maintain proper receipts and documentation regarding distribution of the estate of Amos Joyner, Sr., (k) failure to maintain financial records and retain such financial records together with and including bank reconciliations, (l) created a conflict of interest regarding money to which Angelo Joyner was entitled as against payment for legal fees as criminal defense attorney on behalf of Angelo Joyner, (m) undertaking defense of a criminal action when the Respondent was inadequately prepared and/or incompetent, (n) misrepresentation of facts to the individual heirs to the Estate of Amos Joyner, Sr., (o) the Respondent CT Page 11744 engaged in totally unacceptable and unorthodox accounting and banking procedures, the result of which is that the Respondent did not safeguard his clients monies according to accepted accounting principals.
Section 2-47 of the Connecticut Practice Book provides that after a hearing on the presentment of an attorney for misconduct the court shall render a judgment dismissing the complaint or imposing discipline as follows: reprimand, suspension for a period of time, disbarment or such other discipline as the court deems appropriate. It is the intention of this court to suspend the Respondent for a period of time.
In imposing discipline, several factors can be considered by the court. While the ABA's Standards for Imposing Lawyer's Sanctions (Standards) have not been adopted by Connecticut, the Standards have been used in other cases as a guide to the court's analysis. Statewide Grievance Committee v. Shluger,230 Conn. 668, 673 n. 10 (1994). The Standards provide in relevant part: "Section 3.0 Generally. In imposing a sanction after a finding of lawyer misconduct, the court should consider the following factors: (a) the duty violated; (b) the lawyers mental state; (c) potential actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors."
As far as aggravating and mitigating circumstances, the Standards set forth in the following factors:
Section 9.22 aggravating factors include:
 "(a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a patter of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law' (j) indifference to making restitution; (k) illegal conduct, including that involving the use of controlled substances." CT Page 11745
Section 9.32 mitigating factors include:
 "(a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish move; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary boards or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency including alcoholism or drug abuse when;
 (1) there is medical evidence that the Respondent is affected is a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the Respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;
 (j) delay in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; (m) remoteness of prior offenses."
 "An attorney at law admitted to practice, and in the exercise of the right thus conferred to act as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercised the privilege which has been accorded him. His admission is upon the implied condition that his continued employment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be CT Page 11746 declared forfeited. As important as it is that an attorney be competent to deal with the oftentimes intricate matters which may be entrusted to him, it is infinitely more so that he be upright and trustworthy."
In re Application of Pagano, 207 Conn. 336, 345 (1988) citing In rePeck, 88 Conn. 447, 450 (1914). See, Statewide Grievance v. Shluger,230 Conn. 668, 674-675 (1994); Massameno v. Statewide GrievanceCommittee, 234 Conn. 539, 554-555 (1995).
Practice Book Sec. 2-47 requires the reviewing court to determine "the extent of the final discipline to be imposed . . ." The "paramount importance in attorney disciplinary matters is the protection of the court, the profession of the law and of the public against offenses of attorneys which involve their character, integrity and professional standing." StatewideGrievance Committee v. Shluger, supra at 668. "Courts are, as they should be. Left free to act as may in each case seem best in this matter of most important concern to them and to be administration of justice." In re Peck, 88 conn. 447, 457 (1914).
The preamble to our Rules of Professional Conduct states, in part, that "[a] lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." The attorney's oath requires him or her, first and foremost, to "do no falsehood." The Respondent's actions reflect a major departure from our Rules and from the attorney's oath. His conduct extended over a prolonged period of time and requires a firm response.
"An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded to him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited . . . Therefore, [i]f a court disciplines an attorney, it does so not be mete out punishment to an offender, bu [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important CT Page 11747 functions of the legal profession." (Citation omitted; internal quotation marks omitted.) Doe v. Statewide Grievance Committee,240 Conn. 671, 684-85, ___ A.2d ___ (1997) citing Massameno v.Statewide Grievance Committee, 234 Conn. 539, 554-55,663 A.2d 317 (1995).
It is particularly troubling to this court that the Respondent has a pattern of prior discipline and misconduct on fact patterns very similar to the facts in the instant case that touch upon the Respondent's handling of clients money and the Respondent capacity to engage in deceptive practices. This court is also concerned with the Respondent's candor towards fellow attorneys and courts of this State. In addition it is clear to this court that the Respondent took advantage of the Joyners and victimized them over a period of several years. Equally disturbing to this court is that the Respondent does not acknowledge, recognize or realize the wrongful nature of his misconduct. Therefore, this court suspends the Respondent for a period of two years retroactive to May 1, 1998. Upon the further condition that the Respondent shall need to reapply for readmission pursuant to Practice Book Section 2-53. Prior to readmission and as a condition of consideration for readmission, Respondent at his own expense shall be required to participate in 9 continuing legal education credit hours of courses covering legal ethics, law office management and accounting. Further, as a condition of consideration for readmission, the Respondent shall reimburse the judicial branch for the reasonable costs of the expert witness, Mr. Fielding, which the court finds to be $3,100.00.
John W. Moran Judge of the Superior Court