STATEWIDE GRIEVANCE COMMITTEE *v.*
JONATHAN I. RAPOPORT
(AC 30758)

Lavine, Beach and Pellegrino, Js.

Argued November 17, 2009—officially released February 9, 2010

*Jonathan I. Rapoport*, pro se, the appellant (defendant).

*Kimberly A. Knox*, with whom was *Kenneth J. Bartschi*, for the appellee (plaintiff).

*Opinion*

BEACH, J. This is an appeal by Jonathan I. Rapoport, an attorney suspended from the practice of law, from the judgment of the trial court denying his application for reinstatement to the bar of this state. On appeal, he claims that (1) the court improperly applied an abuse of discretion standard in its consideration of the report and recommendation of the standing committee on recommendations for admission to the bar for Fairfield County (committee), (2) when the court accepted the committee's recommendation, it improperly disregarded the order suspending him from the practice of law for five years and (3) the court and the committee violated his due process rights in various ways. We affirm the judgment of the trial court.

The record discloses the following procedural history and relevant facts. In April, 2001, Rapoport pleaded guilty to three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] Rapoport admitted to having fondled and manipulated the genitalia of three boys, who were all under the age of sixteen. The court, *Hon. Martin L. Nigro*, judge trial referee, sentenced Rapoport to thirty years incarceration, execution suspended after three years, and thirty-five years probation.

Following Rapoport's felony conviction, the statewide grievance committee filed a presentment. Pursuant to Practice Book § 2-40 (e), the matter was referred

[1] At that time, the violations were unclassified felonies carrying the potential of ten years incarceration for each count.

to Judge Nigro, who was the sentencing judge. Following a hearing, Judge Nigro issued a decision on January 3, 2002, in which he concluded that Rapoport "should be suspended from the practice of law for a term of five years, retroactive to September 6, 2001, that is, suspended until September 6, 2006. By that time, he shall have been released from the custody of the commissioner of correction, either from confinement or parole, his electoral rights shall be restored . . . he shall be under the supervision of the probation department and of special services, and shall have had the opportunity to demonstrate whether he would be worthy for reinstatement under the provisions of Practice Book § 2-53 (d)."

Rapoport was released from prison in April, 2004. In August, 2007, he filed in the Superior Court an application for reinstatement to the bar. Pursuant to Practice Book § 2-53 (a), the Superior Court referred the application to the committee. Following hearings on the matter, the committee issued a report. The committee found that Rapoport was not presently fit to practice law and recommended that the court deny Rapoport's application for reinstatement.

Following a hearing, the court, a three judge panel,[2] issued a memorandum of decision. The court determined that the committee did not act arbitrarily, unreasonably, in abuse of its discretion or without a fair investigation of the facts. Accordingly, it accepted the committee's recommendation and denied Rapoport's

---

[2] Practice Book § 2-53 (a) provides in relevant part: "The standing committee on recommendations shall investigate the application, hold hearings pertaining thereto and render a report with its recommendations to the court. The court shall thereupon inform the chief justice of the supreme court of the pending application and report, and the chief justice shall designate two other judges of the superior court to sit with the judge presiding at the session. Such three judges, or a majority of them, shall determine whether the application should be granted."

application for reinstatement to the bar. This appeal followed.

I

Rapoport first claims that the court improperly applied an abuse of discretion standard to the consideration of the committee's recommendation. We disagree.

The issue of whether the appropriate standard of review was used presents a question of law over which our review is plenary. See *Adams* v. *State*, 259 Conn. 831, 837, 792 A.2d 809 (2002); see also *Scott* v. *State Bar Examining Committee*, 220 Conn. 812, 821–22, 601 A.2d 1021 (1992).

The standard that the trial court is to apply when reviewing the committee's recommendation is well settled. "The standard of review in cases involving admission or readmission to the bar has been clear since it was announced by this court in 1906 in *O'Brien's Petition*, [79 Conn. 46, 55–56, 63 A. 777 (1906), overruled in part on other grounds by *In re Application of Dinan*, 157 Conn. 67, 72, 244 A.2d 608 (1968)]." *Scott* v. *State Bar Examining Committee*, supra, 220 Conn. 823. In *O'Brien's Petition*, supra, 55, our Supreme Court "held that the [Superior Court] had 'rightly declined to hear evidence as to questions the decision of which was entrusted to the State bar examining committee' and that it was 'proper for [the court] to inquire whether the approval of the bar was withheld after a fair investigation of the facts.' We have since adhered to that rule generally, stating that the issue before the court is whether the committee or the bar . . . *acted arbitrarily or unreasonably or in abuse of its discretion or without a fair investigation of the facts.*" (Emphasis added.) *In re Application of Warren*, 149 Conn. 266, 273, 178 A.2d 528 (1962); see also *In re Application of Koenig*, 152 Conn. 125, 133, 204 A.2d 33 (1964) ("the court will determine whether the committee acted fairly

and reasonably or from prejudice and ill will in its consideration of the application").

Rapoport does not claim that the court improperly failed to apply this standard but, rather, he disagrees with the use of the standard itself in the readmission context. Citing the different sections of the rules of practice for admission to the bar; Practice Book § 2-3 through 2-10, 2-12; and reinstatement to the bar; Practice Book § 2-53; he argues that it is improper to employ the same standard in cases involving readmission to the bar as is used in cases involving admission to the bar. He urges that a less deferential standard should be used in cases involving readmission.

Our Supreme Court very clearly has stated the standard to be employed in cases involving readmission to the bar. It is well established that "the trial court must determine whether the standing committee, in recommending a denial of an application, 'acted arbitrarily or unreasonably or in abuse of its discretion or without a fair investigation of the facts.' *Scott* v. *State Bar Examining Committee*, [supra, 220 Conn. 818]." *Statewide Grievance Committee* v. *Klein*, 86 Conn. App. 338, 340, 862 A.2d 303 (2004).

We decline Rapoport's invitation to change this standard. It is not within our power as an intermediate appellate court to overrule Supreme Court authority. See *State* v. *Fuller*, 56 Conn. App. 592, 609, 744 A.2d 931, cert. denied, 252 Conn. 949, 748 A.2d 298, cert. denied, 531 U.S. 911, 121 S. Ct. 262, 148 L. Ed. 2d 190 (2000).

II

Rapoport next claims that the court improperly disregarded Judge Nigro's January 3, 2002 order, which imposed a five year suspension from the practice of

law, when it determined that his application should not be granted. We disagree.

Review of the court's decision, following the committee's recommendation, is plenary. See *Scott* v. *State Bar Examining Committee,* supra, 220 Conn. 823 ("[b]ecause the trial court exercises no discretion, but rather is confined to a review of the record before the [committee], we are not limited to the deferential standard of 'manifest abuse' or 'injustice' when reviewing its legal conclusions about the adequacy of the evidence before the [committee]").

The following additional facts are relevant to our resolution of this issue. In its report, the committee determined that Rapoport did not possess the present fitness to practice law and issued a recommendation that the court deny Rapoport's application for reinstatement. In determining whether Rapoport had met his burden of proving present fitness to practice law,[3] the committee considered, inter alia, his moral character in light of the amount of time that had passed since his offenses. The committee noted that "for his entire adult life, [Rapoport] engaged in illegal and immoral conduct. 'A redemptive and rehabilitative life requires the passage of time for documentation. The more serious the misconduct, the more time required to meet the burden of moral trustworthiness.' *In re Application of Avcollie,* 43 Conn. Sup. 13, 22–23, 637 A.2d 409 (1993). Considering the nature and seriousness of [Rapoport's] misconduct, the committee feels that *insufficient time has passed* for [Rapoport] to be deemed morally trustworthy." (Emphasis added.) In its memorandum of decision, the court determined that "[t]he committee's concern about the short duration of time since [Rapoport's] release from prison and his potential risk to the

---

[3] The burden of proving fitness is on the applicant. See *In re Application of Warren,* supra, 149 Conn. 274.

community are borne out by the evidence presented at the hearing and the record as a whole."[4]

Rapoport argues that Judge Nigro ordered suspension for five years and five years only, and that it was thus improper for the committee to determine that he was not fit to practice law for the reason that an insufficient period of time had passed since his offenses and for the court to take that determination of the committee into consideration when denying his application for reinstatement. The issue of whether a sufficient period of time had elapsed following suspension for him to be reinstated, Rapoport contends, was not before the committee or the court because it conclusively had been determined by Judge Nigro's order.

The court's ruling simply was not inconsistent with Judge Nigro's order. Judge Nigro's order imposed sanctions following a presentment proceeding.[5] Judge Nigro

---

[4] In determining that the committee had not acted in abuse of its discretion in recommending that Rapoport's application for readmission be denied, the court stated: "[O]ur courts have long recognized that a 'redemptive and rehabilitative life requires the passage of time for documentation. The more serious the misconduct, the more time required to meet the burden of moral trustworthiness.' *In re Application of Avcollie*, supra, 43 Conn. Sup. 22–23. It is irrefutable that the crimes . . . which [Rapoport] admitted and [of which he] was ultimately convicted, directly implicate the moral parameters of trustworthiness and fitness to practice law. This is particularly true in this case, where the evidence presented to the committee established that the multiple victims involved were all minors, entrusted to [Rapoport's] care, and with whom he had long established relationships. The committee referenced allegations of prior unidentified victim misconduct and also noted that 'for his entire adult life [Rapoport] has engaged in illegal and immoral conduct.' The committee's concern about the short duration of time since [Rapoport's] release from prison and his potential risk to the community are borne out by the evidence presented at the hearing and the record as a whole."

[5] "Hearings concerning the eligibility to practice law of attorneys who have been convicted of a felony in Connecticut are governed by General Statutes § 51-91a and Practice Book § 28B [now § 2-40]. The statute gives the trial court the power to determine, under the circumstances of each case, what sanction is appropriate. Under the statute, an attorney convicted of a felony in Connecticut may be disbarred, suspended, or disciplined in some other manner, at the discretion of the trial court." *Statewide Grievance*

ordered that Rapoport be "suspended from the practice of law for a term of five years," after which time he "shall have had the opportunity to demonstrate whether he would be worthy for reinstatement under the provisions of Practice Book § 2-53 (d)." After more than five years had passed, Rapoport applied for reinstatement pursuant to Practice Book § 2-53.[6] The committee then properly examined whether Rapoport possessed present fitness to practice law. "[T]he appropriate inquiry when deciding whether to grant admission to the bar is whether the applicant has *present* fitness to practice law. . . . Fitness to practice law does not remain fixed in time." (Emphasis in original; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Burton*, 88 Conn. App. 523, 531, 871 A.2d 380 (2005), aff'd, 282 Conn. 1, 917 A.2d 966 (2007). The committee considered, inter alia, the nature of Rapoport's misconduct and his potential risk for reoffending. It reasoned that Rapoport at that time did not possess "good moral character necessary for readmission to the bar."

It was not inconsistent with Judge Nigro's order for the tribunals to consider the passage of time, along with other factors, such as the nature of Rapoport's misconduct and his potential risk for reoffending, in determining whether he possessed good moral character necessary for readmission to the bar. Judge Nigro's order, indicating that Rapoport was *eligible* to apply for readmission after five years, did not explicitly or implicitly limit the discretion of the committee after five years. "An applicant for readmission to the bar must be possessed of such standards of honor and

---

*Committee* v. *Glass*, 46 Conn. App. 472, 476–77, 699 A.2d 1058 (1997); see also Practice Book § 2-40 (e).

[6] Practice Book § 2-53 (d) provides in relevant part: "An attorney who has been suspended from the practice of law in this state for a period of one year or more shall be required to apply for reinstatement in accordance with this section . . . ."

honesty and have such an appreciation of the distinctions between right and wrong in the conduct of men toward each other as will make him a fit and safe person to engage in the practice of law. . . . Good moral character is a necessary and proper qualification for admission to the bar." (Citation omitted.) *In re Application of Koenig,* supra, 152 Conn. 132. "Character is not measured in the crucible of a single instance and the assessment for reentry appropriately centers on the question of present fitness." *In re Application of Pagano,* 207 Conn. 336, 345, 541 A.2d 104 (1988). "An attorney at law admitted to practice, and in the exercise of the right thus conferred to act as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. As important as it is that an attorney be competent to deal with the oftentimes intricate matters which may be entrusted to him, it is infinitely more so that he be upright and trustworthy." (Internal quotation marks omitted.) Id.

## III

Rapoport next argues that his due process rights to a fair trial[7] were violated by (1) the failure of the committee to conduct a separate and independent investigation

[7] Rapoport claims due process violations under both the federal and state constitutions. He has not provided a separate analysis under the state constitution and has therefore waived any claim that the state constitution affords him greater protection than the federal constitution. See *State* v. *Sinvil,* 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004).

of his application, (2) certain acts of the disciplinary counsel during the committee hearings, (3) the committee's prejudice against him and (4) the committee's having made various clearly erroneous factual findings. We examine each claim in turn.

## A

Rapoport claims that Practice Book § 2-53 requires the committee to conduct a separate and independent investigation of his application for reinstatement apart from the committee hearings and that it improperly failed to do so. Rapoport did not raise this claim before the court.[8] An unpreserved claim may be reviewable under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine embodied in Practice Book § 60-5. See *Statewide Grievance Committee* v. *Gifford,* 76 Conn. App. 454, 461, 820 A.2d 309 (2003). Rapoport, however, fails to seek review of his unpreserved claim under *Golding* or the plain error doctrine. "It is inappropriate for an appellate court to engage in a level of review that has not been requested." *State* v. *Elson,* 116 Conn. App. 196, 238, 975 A.2d 678 (2009). "Where a [party] fails to seek review of an unpreserved claim under either *Golding* or the plain error doctrine, this court will not examine such a claim." (Internal quotation marks omitted.) *State* v. *Parham,* 70 Conn. App. 223, 231 n.9, 797 A.2d 599 (2002). Therefore, we decline to review this claim.

## B

Rapoport next claims that his due process rights were violated by certain acts of the disciplinary counsel during the committee hearings.

---

[8] In light of Rapoport's ability to present evidence before the committee without apparent limitation, it is difficult to see how he could have been harmed by whatever vague shortcoming is claimed.

### 1

Rapoport argues that because the proceedings are nonadversarial in nature, the committee acted improperly by permitting the state disciplinary counsel to cross-examine Rapoport's witnesses.[9] Because he fails to cite authority or to provide adequate analysis in support of this claim, we decline to afford it review. See, e.g., *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 266 Conn. 108, 120, 830 A.2d 1121 (2003) ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.]).

### 2

Rapoport next argues that the disciplinary counsel was biased against him. He contends that she acted improperly by contacting and conferring with witnesses who were opposed to his reinstatement while failing to do the same with respect to witnesses who were in favor of his reinstatement.[10] We do not have before us the transcripts of the committee hearings[11] and, accordingly, decline to review this claim due to the inadequacy of the record. *Eremita* v. *Morello,* 111 Conn. App. 103, 107, 958 A.2d 779 (2008) ("[a]ppellants bear the burden

---

[9] We note that disciplinary counsel have broad powers. See, e.g., Practice Book §§ 2-34A (b) (4) and 2-53 (b). Rapoport does not suggest who else would cross-examine witnesses, and it would seem odd to avoid cross-examination altogether.

[10] We again note that disciplinary counsel has broad powers; see footnote 9 of this opinion; including the ability to subpoena witnesses. See Practice Book § 2-34A (b) (4).

[11] The statewide grievance committee provided excerpts from the transcript of the committee hearings in the appendix to its brief. These excerpts, however, do not render the record adequate with respect to this particular issue.

of affording this court an adequate record for review" [internal quotation marks omitted]).

## 3

Rapoport claims that certain statements made by the disciplinary counsel during her summation before the committee were designed to mislead and to frighten the committee into recommending a denial of Rapoport's application and thereby denied him of his right to due process.[12] We disagree.

Rapoport first challenges two statements made by the disciplinary counsel regarding the issue of whether he would be able to meet his burden of proving fitness to practice law. Citing *In re Application of Avcollie,* supra, 43 Conn. Sup. 13, Rapoport argues that the disciplinary counsel misstated the law when she commented that there may be some question whether he "has the requisite or will ever have the requisite moral character to be admitted to the practice of law" and that some acts demonstrate such a lack of moral fitness "that I think they could preclude readmission to the bar at any point in the future."[13] The disciplinary counsel's

---

[12] Rapoport has not provided us with the transcripts of the committee hearings. The statewide grievance committee has included some excerpts in the appendix to its brief that contain some of the disciplinary counsel's statements at issue. For purposes of this argument, we will treat Rapoport's recitation in his brief of the relevant portions of the transcript, which recitation is not contested by the statewide grievance committee, as being an accurate recitation of the portions of the transcript at issue.

[13] The disciplinary counsel made two contested statements in the context of the following argument: "I think with regard to present fitness to practice law, [Rapoport] may well be intellectually fit to practice law, but I frankly have serious questions as *to whether . . . he has the requisite or will ever have the requisite moral character to be admitted to the practice of law.* And as a result of that position, my office is taking a position of opposition to this application. We oppose this application. There are, I think, *some acts that demonstrate such a lack of moral fitness at a human level that I think they could preclude readmission to the bar at any point in the future.* And I think the types of acts that [Rapoport] was convicted of over the period of time that they occurred, the effects that those acts have had, the lingering effects on a number of victims, some of whom were very, very vulnerable

comments addressed the question of whether Rapoport would be able to prove fitness to practice law, which question is the focus of the readmission process. See *In re Application of Pagano*, supra, 207 Conn. 345 (readmission process focuses on issue of present fitness to practice law). In *In re Application of Avcollie*, supra, 27, the court stated: "The law requires a reformation of character as demonstrated by an applicant's more recent life and conduct. The more egregious the misconduct resulting in disbarment, the greater the proof of moral character and trustworthiness required for reinstatement. Declarations of good moral character do not necessarily refute the evidence of bad moral character reasonably inferable from the prior egregious misconduct." The contested statements in the disciplinary counsel's argument were not inconsistent with this proposition.

Rapoport next argues that the disciplinary counsel "invent[ed]" a breach of duty by arguing that Rapoport betrayed a trust and his family's confidence in him. It was not improper for the disciplinary counsel, in discussing whether Rapoport was fit to practice law, to discuss the aspects of Rapoport's crimes that might reflect on moral trustworthiness.

Rapoport also argues that the disciplinary counsel improperly stated that Rapoport's conduct was predatory. In support of his argument, Rapoport refers to the testimony of Eliza Borecka, a licensed clinical social worker who testified in support of the application for reinstatement. At the April 17, 2001 sentencing hearing following Rapoport's criminal trial, Borecka testified that Rapoport is not "predatory" in the sense that he takes a long time to become emotionally attached to the victim before he "grooms" them for sexual acts.

victims . . . the vulnerabilities being very well known to [Rapoport]." (Emphasis added.)

He argues that the characterization by the disciplinary counsel of his conduct as predatory was contrary to "established facts." Rapoport cannot prevail on this tack. Borecka's testimony was not "established fact," and the committee was not required to credit it. *Barrila* v. *Blake*, 190 Conn. 631, 639, 461 A.2d 1375 (1983) ("[a] trier of fact is free to reject testimony even if it is uncontradicted").

Rapoport also argues that the disciplinary counsel misstated facts when she questioned the existence of adequate conditions on his reinstatement and whether potential future clients would be aware that he may only be able to represent people in limited circumstances. He argues that this statement was factually inaccurate because he had expressed his willingness to inform each prospective client of his offense and to have a practice monitor. It was not improper for the disciplinary counsel to question whether these conditions would protect the public adequately.

C

Rapoport next claims that the committee was prejudiced against him. He argues that "[t]o conclude that a committee has not been motivated by prejudice, it is not sufficient to observe that an applicant has been afforded an opportunity to present whatever evidence he wished to; it is more important to see whether the committee has drawn the proper conclusions from the evidence before it. Sometimes a committee's conclusions are themselves evidence of prejudice." Rapoport claims that the committee was prejudiced against him because of its conclusion that, at the present time, he did not possess the good moral character necessary for readmission.[14] This claim is so obviously without merit that little further discussion is necessary.

[14] Rapoport also claims that this finding by the committee was clearly erroneous. The committee, however, had evidence before it from which it could have made this finding. The committee stated in its report that Rapoport "remains on probation for the next thirty years. He must continue to

We agree with the court's determination that "[t]he record is devoid of any bias, prejudice or ill will towards [Rapoport]. . . . The committee credited the long legal career of [Rapoport] and noted [Rapoport's] compliance with the conditions of his probation and his sexual offender treatment. The record reflects a fair and thorough investigation of the facts." In *Keeney* v. *Buccino*, 92 Conn. App. 496, 518, 885 A.2d 1239 (2005), we stated that "[j]ust because a court's statement of findings and conclusions is adverse to a party does not make the statement unfairly prejudicial." Accordingly, Rapoport cannot prevail on this claim.

D

Rapoport also challenges the committee's findings that (1) "for his entire adult life [Rapoport] has engaged in illegal and immoral conduct" and (2) he was a moderate risk to reoffend. We disagree.

We review the committee's findings of fact under the clearly erroneous standard of review. See *Friedman* v. *Connecticut Bar Examining Committee*, 77 Conn. App. 526, 529, 824 A.2d 866 (2003) ("Superior Court's role in reviewing a petition for admission is not that of factfinder" [internal quotation marks omitted]), appeal dismissed, 270 Conn. 457, 853 A.2d 496 (2004); see also *Machado* v. *Statewide Grievance Committee*, 93 Conn. App. 832, 840, 890 A.2d 622 (2006) (reviewing committee in attorney grievance appeal is trier of fact); *Henry* v. *Statewide Grievance Committee*, 111 Conn. App. 12,

undergo sexual offender therapy, he cannot work or travel without approval of his probation officer, and he must disclose to each and every potential client his conviction. Additionally, there is some element of risk of [Rapoport] reoffending. Violation of any condition of his probation may result in his reincarceration. . . . Considering the nature of the [Rapoport's] misconduct, the relatively short period of time since his release from prison and the potential risk for reoffending, the committee finds that [Rapoport] at this time is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney."

21, 957 A.2d 547 (2008) (factual findings reviewed under clearly erroneous standard).

1

Rapoport's testimony before the committee supports the committee's finding that he had engaged in illegal and immoral conduct for his entire adult life.

At the committee hearings, Rapoport testified, in relevant part, as follows:

"[Disciplinary Counsel]: And there were three children who were the victims of the criminal charges. Is that correct?

"[The Witness]: Correct.

"[Disciplinary Counsel]: And there were a total of how many victims all together?

"[The Witness]: Over my entire lifetime?

"[Disciplinary Counsel]: Yes.

"[The Witness]: Probably six or seven.

"[Disciplinary Counsel]: Six or seven.

"[The Witness]: Yeah.

"[Disciplinary Counsel]: Okay. And can you tell us basically the years spanning this period of time?

"[The Witness]: Oh. Probably starting in my twenties and finishing up with what you're aware of here."

Rapoport argues that he voluntarily disclosed involvement with all other victims, which incidents were not criminally actionable and were not the subject of any criminal adjudication. This argument fails to support his claim. Rapoport testified before the committee that there were approximately six or seven victims and that he began victimizing them when he was in his twenties. Based on this testimony, the finding of the

committee that Rapoport had engaged in illegal and immoral conduct for his entire adult life was not clearly erroneous but finds support in the record.

2

Rapoport also takes issue with the committee's findings regarding his risk of reoffending. In its report, the committee, when reciting the evidence at issue, noted that Rapoport had been given numerous tests by Borecka and others to determine Rapoport's risk of reoffending. Referencing exhibit C, which was a sex offender risk assessment report prepared by Dennis Gibeau, a clinical psychologist, the committee noted that "[t]he tests report a mild risk in terms of dangerousness but a moderate risk in terms of relapse. . . . [E]xhibit C . . . suggests that the likelihood of [Rapoport] being reconvicted of a sexual offense increases to a 15 percent chance after fifteen years. . . . Borecka testified that current testing given to [Rapoport] places him in a low risk to reoffend." (Citation omitted.)

Rapoport argues that it was clearly erroneous for the committee to find that both Borecka, his treating therapist, and Gibeau found him to be a moderate risk to reoffend. He argues that Borecka found him to be a low risk to reoffend and that it was a "gross mischaracterization of the evidence for the committee to conclude that [he] is presently a moderate risk to reoffend." Rapoport cannot prevail on his argument.

Rapoport mischaracterizes the committee's recitation of the evidence. The committee did not expressly find that Borecka concluded that he was a moderate risk to reoffend. Rather, the committee, citing Gibeau's report, noted that tests revealed that Rapoport was a moderate risk to reoffend. The committee subsequently noted that Borecka testified that, under current testing, Rapoport was a low risk to reoffend. Later in its report, the committee found that "there is some element of

risk of [Rapoport] reoffending." The committee also cited Rapoport's "potential risk for reoffending" as one reason for finding him unfit or unsafe to practice law and thereby recommending the denial of his application for reinstatement. There was evidence before the committee, from both Borecka and Gibeau, that there was some risk that Rapoport would reoffend. Accordingly, the committee's finding that there was "some element of risk" of Rapoport reoffending was supported by the evidence.

The challenged findings of the committee are supported by the record. Accordingly, the panel acted properly in determining, with respect to the challenged findings, that the committee did not abuse its discretion or act without a fair investigation of the facts.

The judgment is affirmed.

In this opinion the other judges concurred.