STATEWIDE GRIEVANCE COMMITTEE *v.*
RICHARD W. GIFFORD
(AC 22762)

Schaller, Flynn and Dupont, Js.

---

Argued February 21—officially released April 29, 2003

*Richard W. Gifford,* pro se, the appellant (defendant).

*Michael P. Bowler,* assistant bar counsel, for the appellee (plaintiff).

*Opinion*

DUPONT, J. The defendant, Richard W. Gifford, appeals from the judgment of the trial court suspending him from the practice of law for a period of one year. On appeal, he claims that (1) the court lacked subject matter jurisdiction, (2) his procedural due process rights were violated and (3) the court improperly concluded that he had violated rules 1.3, 1.4 and 1.5 of the Rules of Professional Conduct.[1]

---

[1] The court also found that the defendant had violated Practice Book § 2-32 (a) (1) and rule 8.4 (4) of the Rules of Professional Conduct by his failure to answer the grievance complaint. The defendant does not challenge these findings on appeal.

The following facts and procedural history are relevant to the resolution of the defendant's claims on appeal. The defendant is an attorney licensed by the state of Connecticut. In May, 1993, Ann Weichman retained the defendant to pursue a federal age discrimination claim against her former employer, the Travelers Insurance Company (Travelers). The defendant took the matter on a contingency basis, but never provided Weichman with a written fee agreement.

In June, 1993, the defendant filed an action on behalf of Weichman in the United States District Court for the District of Connecticut at Bridgeport. Thereafter, in December, 1993, the defendant attended Travelers' deposition of Weichman. The defendant did not file a trial memorandum as ordered by the District Court and did not respond to Travelers' motion to dismiss, which was based on the defendant's failure to comply with the order. Thus, on June 15, 1994, the District Court granted Travelers' motion and dismissed the case.

Throughout this period, from June, 1993, until the case was dismissed one year later, the defendant did not inform Weichman of the developments in, or status of, her case, which she repeatedly inquired about through telephone calls and letters. After five years of waiting to hear from the defendant, Weichman filed a complaint with the plaintiff, the statewide grievance committee (grievance committee), in April, 1999. In accordance with Practice Book § 2-32, the grievance committee forwarded the complaint to the defendant for his response. The defendant never responded. On July 25, 2000, the grievance committee presented the defendant for misconduct not occurring in the presence of the court.[2] See Practice Book § 2-47.

The presentment essentially contained three charges: The failure to communicate with a client and to repre-

---

[2] The grievance committee filed an amended complaint on August 10, 2000, and orally amended the complaint on November 16, 2001.

sent her diligently; the failure to provide a written fee agreement in a contingency fee case; and the failure to answer the grievance complaint. The court ordered a hearing for September 13, 2000. The defendant was served with process on August 5, 2000, at his usual place of abode. On September 8, 2000, the defendant filed a request to revise the complaint, which was subsequently denied. At the September 13 hearing, the court ordered the defendant to file his answer and special defenses within two weeks.[3] The defendant then filed an answer to the complaint and special defenses on September 27, 2000. On October 2, 2000, the defendant filed a motion to dismiss for lack of subject matter jurisdiction, which the court denied.[4] The defendant filed a trial memorandum on December 17, 2000.

Subsequently, on April 18, 2001, the court held a hearing on the presentment. The defendant was not present at the hearing and had no notice that a hearing would take place on that day.[5] The court held the hearing in his absence. The grievance committee offered exhibits and the testimony of the complaining witness, Weichman.

Following the hearing, by letter dated September 6, 2001, the grievance committee's attorney inquired with the court as to the status of the grievance against the

[3] At this time, a case management conference was scheduled for October 6, 2000.

[4] The defendant claimed that the substantive allegations of the presentment arose solely from his representation in federal court and, therefore, only that court could discipline him. In a well reasoned decision, the court held on November 27, 2000, that rule 8.5 of the Rules of Professional Conduct specifically gives the state courts of Connecticut jurisdiction over misconduct committed in federal court by an attorney licensed in Connecticut.

[5] Although the defendant had filed responsive pleadings in the case, he did not file an appearance and therefore did not receive notice of the hearing from the court clerk's office. The grievance committee's attorney and a court clerk indicated that they had not orally notified the defendant of the hearing.

defendant. The defendant, having also received a copy of this same letter, responded to the court on September 7, 2001, indicating his lack of knowledge of the April 18, 2001 hearing either by notice from the court clerk's office or opposing counsel.

Thereafter, notice of a status conference and a second evidentiary hearing was sent to both parties. At the November 8, 2001, status conference, the defendant waived his right to cross-examine Weichman.[6] The defendant renewed his waiver of that right at the second evidentiary hearing held on November 16, 2001. The defendant then presented exhibits and testimony. Both parties submitted trial briefs. On January 23, 2002, the court, in a memorandum of decision, concluded, on the basis of clear and convincing evidence that was elicited at both evidentiary hearings, that the defendant had violated rules 1.3, 1.4 (a) and (b), 1.5 (c) and 8.4 (4) of the Rules of Professional Conduct and Practice Book § 2-32 (a) (1). The defendant was suspended from the practice of law for one year.[7]

I

JURISDICTION

The defendant's first claim on appeal is that the court did not have subject matter jurisdiction. He argues that because Weichman's case was in federal court, the federal court had exclusive jurisdiction over any miscon-

[6] There is no transcript of the November 8, 2001 status conference. The November 16, 2001 hearing transcript makes clear, however, that the defendant initially waived the right to cross-examine Weichman at the conference.

[7] The defendant moved for a stay of the suspension order on February 13, 2002, because the automatic stay provisions of Practice Book § 61-11 do not apply to attorney grievance actions. The stay was denied, and this court denied relief on March 26, 2002. Although the defendant will have served his one year suspension by the time this opinion is published, the appeal is not rendered moot because of the collateral consequences involved in suspension actions. See *Statewide Grievance Committee* v. *Whitney*, 227 Conn. 829, 837–38 n.13, 633 A.2d 296 (1993).

duct. The grievance committee argues that the defendant, as an attorney licensed in Connecticut, is subject to this state's discipline for actions in any court. We agree with the grievance committee.

The resolution of the defendant's first claim requires an interpretation of rule 8.5 of the Rules of Professional Conduct, which provides: "A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere."

In rendering our interpretation of rule 8.5, we note that "the rules regulating attorney grievance procedures exist within the broader framework of the relationship between attorneys and the judiciary. The practice of law is . . . a profession the main purpose of which is to aid in the doing of justice . . . . An attorney as an officer of the court in the administration of justice, is *continually accountable* to it for the manner in which he exercises the privilege which has been accorded him. . . . This unique position as officers and commissioners of the court . . . casts attorneys in a special relationship with the judiciary and subjects them to its discipline." (Emphasis added; internal quotation marks omitted.) *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671, 677, 694 A.2d 1218 (1997); see also *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 237–38, 558 A.2d 986 (1989).

Although we could find no Connecticut appellate case interpreting rule 8.5, the broad supervisory role of the judiciary in governing attorney conduct causes us to conclude that the plain language of the rule subjects the defendant, a licensed Connecticut attorney, to discipline by Connecticut courts for his actions in federal District Court.[8] The state is the primary jurisdiction that

[8] The defendant cites several cases for the proposition that a federal court has exclusive jurisdiction over the actions of attorneys in its court. Contrary to the defendant's assertions, we read these cases to stand for the proposition that "[t]he two judicial systems of courts, the state judicatures and the

sponsors a lawyer and is the governmental entity that primarily presents a lawyer to the public, thereby creating in the state a basic interest in the ethical performance of a lawyer. See *In re Sawyer*, 260 F.2d 189, 201 (9th Cir. 1958), rev'd on other grounds, 360 U.S. 622, 79 S. Ct. 1376, 3 L. Ed. 2d 1473 (1959). The commentary to rule 8.5 provides: "In modern practice lawyers frequently act outside the territorial limits of the jurisdiction in which they are licensed to practice, either in another state or outside the United States. In doing so, they remain subject to the governing authority of the jurisdiction in which they are licensed to practice."

We therefore conclude that the court had subject matter jurisdiction of the defendant's presentment.

## II

## NOTICE

The defendant next claims that his procedural due process rights were violated because the court heard testimony of the complaining witness at the hearing held April 18, 2001, without notice to, or the presence of, the defendant. The grievance committee argues that because the defendant did not preserve this due process claim, we should not afford it review. Alternatively, the grievance committee argues that the court's holding of a second hearing on November 16, 2001, and the defendant's waiver of his right to cross-examine the

---

federal judiciary, have autonomous control over the conduct of their officers, among whom . . . lawyers are included." *Theard* v. *United States*, 354 U.S. 278, 281, 77 S. Ct. 1274, 1 L. Ed. 2d 1342 (1957). Therefore, an attorney licensed by both courts is usually subject to the independent jurisdiction of either or both; Rules of Professional Conduct 8.5, commentary; although the sanctions of either cannot affect the other's jurisdiction to sanction or to prescribe the type of sanction. See id.; *In re Landerman*, 7 F. Sup. 2d 1202, 1203 (D. Utah 1998) (state court's discipline does not control federal court's actions); *Sperry* v. *Florida ex rel. Florida Bar*, 373 U.S. 379, 83 S. Ct. 1322, 10 L. Ed. 2d 428 (1963) (same); see also Rules of Professional Conduct 8.5, commentary.

complaining witness satisfied the defendant's due process rights. Both parties have briefed the defendant's claim. We agree that the claim was not properly preserved, but we will review it under the precepts of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973).

An unpreserved claim is reviewable under *Golding* if the claim is constitutional in nature and if there is an adequate record for review. *State* v. *Thurman*, 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987). Here, the record is adequate for review, and the claim is a constitutional one. It is undisputed that the defendant had no notice of the hearing held on April 18, 2001.[9] The defendant claims that he was denied procedural due process because of his lack of notice. This claim is constitutional in nature.

Attorney disciplinary proceedings are adversary and quasi-criminal in nature, and, as such, the subject attorneys are entitled to due process of law. *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 306, 627 A.2d 901 (1993). "A license to practice law is a property interest that cannot be suspended without due process." Id. Procedural due process is a required constitutional right adhering to those attorneys who are subject to disciplinary action so that they are not unjustly deprived of their reputations or livelihoods. Id., 307. A defendant attorney is entitled to notice of the charges and a fair hearing. *Kucej* v. *Statewide Grievance Committee*, 239 Conn. 449, 463, 686 A.2d 110 (1996), cert. denied, 520 U.S. 1276, 117 S. Ct. 2457, 138 L. Ed. 2d 214 (1997).

---

[9] The record indicates that according to the clerical routine, notice is sent to those parties entering an appearance. Because the defendant did not file an appearance, he did not receive notice of the April 18, 2001 hearing. For purposes of this review, we do not consider whether the various pleadings filed by the defendant constituted an appearance. See Practice Book § 3-7 (a).

Although the defendant was entitled to due process, which includes notice of any hearing related to the charges against him, due process is a flexible concept, and a determination of the particular process that is due a defendant depends on the particular circumstances. *Statewide Grievance Committee* v. *Botwick*, supra, 226 Conn. 306–307.

The evidence presented at the April 18, 2001 hearing in the absence of the defendant was the testimony of the complaining witness and the grievance committee's exhibits. After learning of the hearing and the evidence presented, the defendant did not object to any of the exhibits or to the testimony taken in his absence. In fact, at the November 8, 2001 status conference and the subsequent November 16, 2001 hearing, the defendant specifically declined to conduct a cross-examination of the complaining witness. The defendant was given an opportunity at the second evidentiary hearing to offer any evidence he saw fit. He was given an opportunity to brief the issues and, in fact, did submit a trial brief. The court specifically stated in its memorandum of decision that it considered the evidence from both evidentiary hearings. Therefore, after review, we conclude that the defendant was not deprived of procedural due process.

### III

### RULES OF PROFESSIONAL CONDUCT

The defendant's final claims on appeal relate to the court's conclusions that he violated rules 1.3, 1.4 (a) and (b), and 1.5 of the Rules of Professional Conduct. Basically, the findings concern (1) the defendant's failure to communicate with his client and to represent her diligently, and (2) the defendant's failure to provide a written fee agreement in a contingency fee case.

The defendant argues that the facts as found by the court do not support a conclusion that he violated any

of the rules. "Where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct, and find support in the facts set out in the court's memorandum of decision. . . . The court's conclusions must stand unless they involve the application of some erroneous rule of law material to the case." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Dixon*, 62 Conn. App. 507, 512, 772 A.2d 160 (2001).

With respect to the failure to communicate or to represent his client diligently, the defendant argues that because he believed Weichman's claim was frivolous, he was excused from continuing to work on her case. The defendant argues that in the course of a deposition of his client, he discovered that her testimony was inconsistent with the allegations she had made before the commission on human rights and opportunities. As a result, the defendant did not believe her and discontinued any further work on her case.

The grievance committee argues that regardless of whether the defendant's beliefs were justified, he still was required to abide by the Rules of Professional Conduct until the attorney-client relationship was terminated and, thus, that the court properly concluded that he had violated each of the relevant rules. We agree with the grievance committee.

Rule 1.3 requires that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." The commentary to this rule provides in relevant part: "Unless the relationship is terminated as provided in Rule 1.16, a lawyer should *carry through to conclusion all matters* undertaken for a client. . . ." (Emphasis added.) Thus, the court correctly concluded that the defendant had violated this rule when, after hearing Weichman's deposition testimony, he completely aban-

doned the case and did not carry the matter through to its conclusion.

Additionally, because the defendant had a duty to carry the case through to a conclusion, unless the relationship was terminated, he violated rule 1.4 (a) in failing to communicate with Weichman regarding the status of her case or to respond to her requests for information, and rule 1.4 (b) in failing to explain his concerns with her case and to give her an opportunity to make decisions regarding her representation.

The defendant also argues that rule 11 (b) of the Federal Rules of Civil Procedure[10] prevented him from presenting to the court any frivolous claims or pleadings for an improper purpose. He claims that if he had filed a memorandum of law or opposed the motion to dismiss in Weichman's federal case, he would have been subject to sanctions.[11] His solution was to advise the client of his lack of belief in her cause so that he could withdraw his appearance in the case and so that she could hire other counsel. As the court correctly concluded, the defendant's actions established by clear and convincing evidence that he violated rules 1.3, and 1.4 (a) and (b).

---

[10] Rule 11 of the Federal Rules of Civil Procedure provides in relevant part: "(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . . (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible or the violation. . . ."

[11] We note that the defendant never received any indication that rule 11 sanctions were being considered.

In reference to the court's finding that he violated rule 1.5,[12] the defendant argues that because he never billed for his services or collected a fee, he could not have violated rule 1.5. Rule 1.5 (c) provides in relevant part: "A fee may be contingent on the outcome of the matter for which the service is rendered . . . . A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined . . . ." The rule contemplates that there may be no recovery in a case in which a fee is contingent on the outcome,[13] but does not exempt such cases from the purview of the rule.

In its memorandum of decision, the court specifically credited Weichman's testimony that the agreement between her and the defendant was a contingency agreement and that she never had received a written fee agreement. The defendant does not deny these facts, although he argues that Weichman's testimony did not establish the terms of the agreement. There is no exception within the rule, and the defendant does not cite any law or decision that requires an agreement to be in writing only when the attorney collects or bills a fee. At the time any contingency fee arrangement is initially discussed, it is not then known whether the contingency will occur. A plaintiff's cause may result in a judgment for the defendant, without any payment for legal services ever becoming due. If rule 1.5 (c) applied only when the fee became due, the rule would have no purpose. We conclude that the court correctly concluded that the defendant's failure to provide a written agreement to his client was a violation of rule 1.5.

---

[12] The grievance committee alleged that the defendant had violated rules 1.5 (b) or (c). Because the court specifically found that Weichman and the defendant had a contingency agreement, only subsection (c) applies.

[13] Rule 1.5 (c) provides in relevant part: "Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination."

The judgment is affirmed.

In this opinion the other judges concurred.