******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DISCIPLINARY COUNSEL *v.* BENSON A. SNAIDER
(AC 35736)

Lavine, Keller and Borden, Js.

*Argued February 7—officially released April 29, 2014*

(Appeal from Superior Court, judicial district of New Haven, B. Fischer, J.)

*Ira B. Grudberg*, for the appellant (defendant).

*Suzanne B. Sutton*, first assistant chief disciplinary counsel, with whom was *Desi Imetovski*, assistant disciplinary counsel, for the appellee (plaintiff).

*Opinion*

LAVINE, J. The defendant, Benson A. Snaider, formerly of the Connecticut bar, appeals from the judgment of the trial court rendered after the court accepted his resignation from the bar and imposed discipline pursuant to Practice Book § 2-47 (d). On appeal, the defendant claims that (1) the court's acceptance of his resignation constituted a final judgment and therefore the court (a) had no authority to impose discipline on him, and thereby (b) denied him due process of law, and (2) the court imposed discipline that is unfair and unreasonable given his age, namely, seventy-five years old. We disagree with the defendant and, thus, affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. On October 13, 2011, pursuant to Practice Book § 2-42,[1] the plaintiff, Disciplinary Counsel, acting through Attorney Suzanne B. Sutton, first assistant chief disciplinary counsel, applied for an order of interim suspension of the defendant's license to practice law, alleging that he had misappropriated the funds of a client. The defendant admitted that he had misappropriated his client's funds, but challenged the amount of the misappropriation. Following a hearing held on November 3, 2011, the court found that the defendant had committed professional misconduct by misappropriating the funds of a client and that he presented "a threat of irreparable harm to current and potential clients." The court suspended the defendant's license to practice law, appointed a trustee to protect the interests of his clients, and ordered the Statewide Grievance Committee to conduct an audit of his trustee accounts.[2]

On July 10, 2012, the plaintiff filed a request to amend its application from an interim order of suspension to a presentment complaint (presentment), pursuant to Practice Book §§ 2-40[3] and 2-47.[4] The presentment alleged two counts related to the defendant's misappropriation of his client's funds and was filed subsequent to a decision issued by the Statewide Grievance Committee and the defendant's felony conviction,[5] both of which occurred after the defendant's license to practice law was suspended.

The court scheduled a hearing on the presentment to be held on November 16, 2012. On October 26, 2012, however, the defendant submitted to the Superior Court his resignation from the bar without conditions.[6] The November 16, 2012 hearing was continued for unrelated reasons, and on November 21, 2012, the court accepted the defendant's resignation from the bar. The court continued the presentment proceedings to permit the parties to present evidence as to mitigating and aggravating circumstances regarding the discipline to be imposed. The defendant, however, argued that, because

the court had accepted his resignation, the court lacked personal jurisdiction to discipline him for the misconduct alleged in the presentment. Counsel for the plaintiff disagreed. Thereafter, the parties submitted briefs on the issue of the court's jurisdiction over the defendant. On March 26, 2013, the court concluded that it had jurisdiction to determine when the defendant could apply, if ever, for readmission to the bar.

The parties appeared before the court on April 29, 2013. The plaintiff presented evidence of aggravating factors with regard to the defendant's misconduct and argued that he should not be permitted to apply for readmission for twelve years. The defendant presented no evidence but argued that, given his age and the fact that he had practiced law for fifty years without misconduct, he should be permitted to apply for readmission to the bar in five years. The court issued its order on May 8, 2013, prohibiting the defendant from applying for readmission to the bar for twelve years from April 29, 2013.[7] The defendant appealed.

Before we address the defendant's specific claims on appeal, we set forth the overarching principles articulating the relationship between the Superior Court and members of the bar. "The Superior Court possesses inherent authority to regulate attorney conduct and to discipline the members of the bar. . . . The judiciary has the power to admit attorneys to practice and to disbar them . . . to fix the qualifications of those to be admitted . . . and to define what constitutes the practice of law. . . . In the exercise of its disciplinary power, the Superior Court has adopted the Code of Professional Responsibility [now Rules of Professional Conduct]." (Citations omitted; internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 553–54, 663 A.2d 317 (1995).

"Disciplinary proceedings are for the purpose of preserving the courts from the official ministration of persons unfit to practice in them." (Internal quotation marks omitted.) *Ex Parte Wall*, 107 U.S. 265, 288, 2 S. Ct. 569, 27 L. Ed. 552 (1882). "The proceeding to disbar [or suspend] an attorney is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court. . . . Once the complaint is made, the court controls the situation and procedure, in its discretion, as the interests of justice may seem to it to require. . . . [T]he power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct and the purging of the bar from the taint of unfit membership. Such statutes as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct. . . . In proceedings such as those at issue, therefore, the attorney's

relations to the tribunal and the character and purpose of the inquiry are such that unless it clearly appears that his rights have in some substantial way been denied him, the action of the court will not be set aside upon review." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 238–39, 558 A.2d 986 (1989).

I

The defendant first claims that, after it accepted his resignation from the bar pursuant to Practice Book § 2-52, the court improperly modified its judgment by disciplining him, i.e., ordered that he was not permitted to apply for readmission to the bar for twelve years, pursuant to Practice Book § 2-47 (d). We disagree, concluding that the court's order disciplining the defendant is consistent with the comprehensive disciplinary scheme established to safeguard the public and the court from unfit practitioners. See *Massameno* v. *Statewide Grievance Committee*, supra, 234 Conn. 554. Moreover, a presentment is justiciable if the alleged misconduct occurred prior to the attorney's suspension or disbarment on an unrelated matter. See *Statewide Grievance Committee* v. *Burton*, 88 Conn. App. 523, 524–33, 871 A.2d 380 (2005) (trial court had jurisdiction to adjudicate presentment of disbarred lawyer), aff'd, 282 Conn. 1, 917 A.2d 966 (2007).

"[A] challenge to the personal jurisdiction of the trial court is a question of law, and, therefore, our review is plenary." *Investment Associates* v. *Summit Associates, Inc.*, 132 Conn. App. 192, 202, 31 A.3d 820 (2011), aff'd, 309 Conn. 840, 74 A.3d 1192 (2013).

The following additional facts are relevant to our resolution of this claim. During the November 21, 2012 hearing, the court accepted the defendant's resignation from the bar and stated: "The court will accept the resignation, and again, I'm going to hear argument as I understand it on when [the defendant] could apply for readmission . . . ."

After the court inquired whether there were questions, counsel for the defendant argued that, because the defendant had resigned from the bar, the court lacked jurisdiction to enter an order of discipline. Moreover, he argued, it is the responsibility of the Connecticut Bar Examining Committee to determine if the defendant may ever apply for readmission. The court stated that it would retain jurisdiction and that it would hear argument as to when the defendant could apply for readmission. The plaintiff was seeking a twelve year period and the defendant was willing to accept a five year period. The defendant also continued to argue, on the basis of his resignation, that a final judgment had been rendered, and the court no longer had jurisdiction over him. The parties briefed the issue of jurisdiction and appeared before the court to argue the matter on

March 26, 2013. The court concluded that it had jurisdiction to issue a disciplinary order.

On April 29, 2013, the court heard evidence presented by the plaintiff, including evidence that the defendant had been charged with larceny in the first degree for allegedly misappropriating the funds of a second client, and heard argument from both counsel as to when the defendant should be permitted to apply for readmission. The court issued an order on May 8, 2013, stating, in part, that it had jurisdiction to adjudicate the presentment and that the defendant "is not eligible to apply for readmission to the Connecticut [b]ar for a period of twelve years from April 29, 2013. He will be subject to the imposition of such conditions upon his application for reinstatement as may be deemed appropriate at that time." See footnote 7 of this opinion.

On appeal, the defendant argues that, at the time his resignation was before the court, the court could have pursued one of several options: (1) defer ruling on his resignation until it had heard evidence and argument with regard to further sanctions; (2) decline to accept the resignation and adjudicate the presentment pursuant to Practice Book § 2-47 (d); or (3) decline to accept his resignation unless it included a satisfactory limitation on his right to apply for readmission. It is the defendant's position that, when the court accepted his resignation, it rendered a final judgment, which defined his rights and status, and any further action by the court as to him constituted a modification of the judgment.[8]

The defendant grounds his claim, in part, in Practice Book (2012) § 2-52 (b), which was in effect at the time of the November 21, 2012 hearing.[9] The defendant argues that under the 2012 version of § 2-52 (b), which concerns the resignation of an attorney, the court did not have the authority or discretion to impose "such other discipline as the court deems appropriate." The defendant notes that that language is contained in Practice Book § 2-47 (d), which governs presentments. He concludes therefore that, in 2012, § 2-47 (d), not § 2-52, permitted the court to restrict the ability of a person who has been disbarred to apply for readmission.[10]

To support his argument, the defendant relies on one of the tenets of statutory construction: "[w]here a statute, with reference to one subject contains a given provision, the omission of such provision for a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003). Consequently, the defendant concludes that because the court accepted his resignation pursuant to Practice Book (2012) § 2-52 (b), it was powerless to impose disciplinary sanctions that he did not volunteer in his resignation.

We disagree with the defendant because Practice Book §§ 2-47 (d) and 2-52 (b) are functionally different. Section 2-47 is the method by which alleged attorney misconduct is brought to the attention of the Superior Court by the disciplinary counsel. Section 2-52 is an option available to an attorney under investigation by a grievance panel, reviewing committee or the Statewide Grievance Committee or against whom a presentment for misconduct is pending to resign from the bar without a trial. In his case, the defendant *exercised his option* to resign from the bar. His resignation, however, did not foreclose the imposition of discipline. Moreover, under our common law, the court has broad discretion to discipline an attorney to protect the court from individuals who are unfit to practice law. See *Massameno* v. *Statewide Grievance Committee*, supra, 234 Conn. 553–54.

"There are three possible sources for the authority of courts to sanction counsel and pro se parties. These are inherent power, statutory power, and the power conferred by published rules of the court." *In the Matter of Presnick*, 19 Conn. App. 340, 347, 563 A.2d 299 (1989), cert. denied, 213 Conn. 801, 567 A.2d 833 (1989). "That power may be expressly recognized by rule or statute but it exists independently of either and arises because of the control that must necessarily be vested in courts in order for them to be able to manage their own affairs as to achieve an orderly and expeditious disposition of cases." Id. "[R]eference to specific rules does not constitute the only basis for a finding of guilt in attorney misconduct proceedings. Rather, reference to a specific rule simply assists the trial court in drawing its conclusions as to whether, under the totality of circumstances, professional misconduct occurred." *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 310, 627 A.2d 901 (1993).

Our conclusion that the court had jurisdiction over the defendant to impose discipline after it accepted his resignation is controlled by this court's decision in *Statewide Grievance Committee* v. *Burton*, supra, 88 Conn. App. 523. In *Burton*, this court determined that the trial court had subject matter jurisdiction over "an attorney who was disbarred subsequent to the events alleged in the presentment . . . because the issue is justiciable." Id., 524. In the present case, the misconduct alleged in the presentment, also, was justiciable.

*Burton* concerned an attorney who had been disbarred in 2001 for misconduct related to a civil action commenced later than December, 1999. *Burton* v. *Mottolese*, 267 Conn. 1, 3, 835 A.2d 98 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004). In January, 2004, the Statewide Grievance Committee filed a presentment against Nancy Burton for misconduct that occurred in 1995. Id. Burton filed a motion to dismiss the presentment claiming that the trial court

lacked subject matter jurisdiction because she was no longer a member of the bar. *Statewide Grievance Committee* v. *Burton*, supra, 88 Conn. App. 524. The trial court agreed and dismissed the presentment. The Statewide Grievance Committee filed an appeal to this court, which reversed the judgment of dismissal, concluding that the issue of Burton's alleged 1995 misconduct was justiciable in that an adjudication of the presentment would provide both actual and practical relief to the parties. Id., 531. This court's reasoning in *Burton* informs our analysis in this case.

The *Burton* presentment "concerns an incident that occurred in 1995, alleging misconduct that occurred before [Burton] was disbarred. [General Statutes § 51-90e] and Practice Book § 2-47 concern the misconduct of attorneys. [E]ach disciplinary action must be decided on its own particular facts in order to determine the appropriate discipline. . . . We therefore conclude that the court can adjudicate the 1995 incident to determine whether [Burton's] alleged conduct was, in fact, misconduct. That determination can be made irrespective of [Burton's] current status." (Citations omitted; internal quotation marks omitted.) Id., 529–30.

A comprehensive disciplinary scheme exists "to safeguard the administration of justice, and [is] designed to preserve public confidence in the system and to protect the public and the court from unfit practitioners." (Internal quotation marks omitted.) Id., 530. "An attorney, as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Internal quotation marks omitted.) Id., 530–31.

In *Burton*, this court noted that a person who has been disbarred has the right to apply for readmission pursuant to Practice Book § 2-53 and that the Superior Court may reinstate, as an attorney-at-law, a person who has been disbarred. Id., 531. Under the terms of Burton's disbarment, she had the right to apply for readmission after five years. "The appropriate inquiry when deciding whether to grant admission to the bar

is whether the applicant has *present* fitness to practice law. . . . Fitness to practice law does not remain fixed in time." (Emphasis in original; internal quotation marks omitted.) Id.

In *Burton*, this court concluded that there was a practical benefit to both Burton and the Statewide Grievance Committee to resolve the matter concerning the 1995 conduct sooner, rather than later. Id. "A resolution of the controversy also will benefit the courts and the public, the third party beneficiaries of our attorney disciplinary system. If, and when, [Burton] seeks to apply for readmission to the bar, [her] record before the bar admission committee will be more complete if this matter is adjudicated. The issue to be decided is whether [Burton's] conduct with respect to the 1995 incident violates our code of professional conduct.

"With respect to [Burton], we foresee a possible impediment to her applying for readmission to the bar if the 1995 incident remains unresolved. We cannot anticipate how the absence of a decision will be considered by the bar examining committee that would review [her] application for readmission. Alternatively, if [Burton] is readmitted to the bar, will she immediately be faced with a presentment related to the 1995 incident?" Id., 531–32. Moreover, the Superior Court is not limited to suspending or disbarring an attorney from the practice of law. Id., 532. "Practice Book § 2-47 (a) does not limit the Superior Court to those two forms of discipline, as it may impose 'such other discipline as the court deems appropriate.' " Id.

For the same reasons, the court here had jurisdiction to adjudicate the defendant's presentment, despite the fact that he voluntarily had resigned from the bar. Although the defendant had resigned, there was no finding by the court as to the presentment allegations of misappropriation and what discipline, if any, should be imposed. Practice Book § 2-47 (b) provides: "The sole issue to be determined in a disciplinary proceeding predicated upon conviction of a felony, any larceny or crime for which the lawyer is sentenced to a term of incarceration or for which a suspended period of incarceration is imposed shall be the extent of the final discipline to be imposed."

In the trial court and in this court, the defendant stated that he had lived his life as an attorney and wanted to die as an attorney. Given his age, the defendant asked that he be permitted to apply for readmission to the bar sooner rather than later.[11] Without an adjudication of the allegations of the presentment now, the defendant may have had to face a similar presentment if he ever were to apply for readmission to the bar. As in *Burton*, it was to the benefit of the parties, as well as the court, to resolve the matter now.

For the foregoing reasons, we conclude that the court

had jurisdiction to adjudicate the presentment and to impose discipline after it accepted the defendant's resignation from the bar.

## II

The defendant's second claim is that the court denied him due process of law by imposing discipline beyond that contained in his letter of resignation. We disagree.

"Procedural due process is a required constitutional right adhering to those attorneys who are subject to disciplinary actions so that they are not unjustly deprived of their reputations or livelihoods. . . . A defendant attorney is entitled to notice of the charges and a fair hearing." (Citation omitted.) *Statewide Grievance Committee* v. *Gifford*, 76 Conn. App. 454, 461, 820 A.2d 309 (2003).

In this case, the court held a hearing on the application for an order of interim suspension of the defendant's license to practice law. Thereafter, pursuant to the plaintiff's request, the application was amended to a presentment. The defendant did not object to the presentment, but chose to resign from the bar. Immediately after accepting the defendant's resignation, the court stated that it would retain jurisdiction to determine the discipline to be imposed. The court afforded the defendant the opportunity to brief the question of its jurisdiction and a hearing. The court also provided the defendant with an opportunity to present evidence related to mitigating factors to consider regarding discipline.

The defendant predicates his claim on the 2013 amendments to Practice Book (2013) § 2-52, particularly the addition of subsection (e), which provides: "Acceptance by the court of an attorney's resignation from the bar without the waiver of right to apply for readmission to the bar at any time in the future shall not be a bar to any other disciplinary proceedings based on conduct occurring before or after the acceptance of the attorney's resignation." The defendant argues that subsection (e) broadens the power of the trial court to impose new disciplinary sanctions on a resigning attorney after the court accepts the resignation. That language, the defendant argues, is substantive in nature and may be applied prospectively only. We disagree with the defendant's claim, as the sanction imposed by the court was imposed pursuant to the misconduct alleged in the presentment complaint; see Practice Book § 2-47 (d); about which the defendant had fair notice and a hearing. See *Statewide Grievance Committee* v. *Botwick*, supra, 226 Conn. 308.

We agree that an attorney against whom misconduct is alleged in a presentment has the option to resign from the bar. See Practice Book § 2-52. The resignation from the bar, however, does not terminate the presentment proceeding in its entirety. It only terminates a

part of the process by sparing the attorney from a trial as to the misconduct alleged in the presentment. The court is endowed with authority to impose discipline pursuant to Practice Book § 2-47 (d).

Our case law holds that an attorney faced with allegations of misconduct is entitled to notice and a hearing. See *In the Matter of Presnick*, supra, 19 Conn. App. 349. The application for an order of interim suspension and subsequent presentment gave the defendant notice of the allegations of misconduct against him. Our review of the transcript of the proceedings before the court indicate that the court afforded the defendant a hearing on multiple occasions, the opportunity to brief his legal claims, the opportunity to present evidence, and the opportunity to argue to the court. The defendant received the due process to which he was entitled, and his claim therefore fails.[12]

### III

The defendant's last claim is that the discipline imposed by the court is unfair and unreasonable. We do not agree.

"As long as there is no denial of due process, we conclude that this court may, for good cause, discipline attorneys who practice before it by suspending them from practice in this court for a reasonable and stated period." *In the Matter of Presnick*, supra, 19 Conn. App. 349. The substance of the plaintiff's claim is that given his age, a twelve year prohibition against applying for readmission to the bar, may constitute permanent disbarment, which is contrary to our law. "Connecticut does not acknowledge permanent disbarment. Permanent does not mean forever. [D]isbarment is not punishment for a crime, but, rather the withdrawal of a privilege . . . ." (Internal quotation marks omitted.) *In re Application of Avcollie*, 43 Conn. Supp. 13, 20, 637 A.2d 409 (1993).

We acknowledge the legal precept cited by the defendant, but the fact that he was seventy-five years old when the court imposed discipline in May, 2013, is not relevant to our review of the court's exercise of discretion in imposing a term of twelve years before the defendant may apply for readmission to the bar. The relevant facts are the defendant's misconduct.[13] The court was presented with evidence of gross and unconscionable misconduct on the part of the defendant with respect to the funds of two of his clients. The defendant admitted to misappropriating approximately $800,000 of a client's funds, although he claimed that the sum was much less. He failed to cooperate with the Statewide Grievance Committee's audit of his trustee accounts. In a criminal proceeding in Stamford, he was convicted of larceny in the first degree for the misappropriation of $800,000 and given a suspended sentence of five years imprisonment. Thereafter, the defendant was arrested

following a hearing that there was probable cause that he had misappropriated approximately $175,000 from a second client.[14] After finding that the defendant had misappropriated almost $1 million from two clients, the court found that he caused substantial injury to his clients and poses a substantial threat of harm to any prospective client. Moreover, accepting the premise of the defendant's argument would produce absurd results. Pursuant to the defendant's logic, a ninety year old lawyer who stole similar amounts would deserve only a slap on the wrist. The proposition that older lawyers who steal from their clients should be rewarded for the length of their membership in the bar is dubious, to say the least. On the basis of the evidence and the court's findings, we cannot conclude that the court abused its discretion by ordering that the defendant may not apply for readmission to the bar for a period of twelve years from April 29, 2013. We also cannot conclude that the discipline is unfair and unreasonable given the defendant's age.[15]

## IV

Our review of the trial court file discloses that it states that the case was disposed of on November 21, 2012, and that a final judgment was rendered on that date. See footnote 8 of this opinion. There are clerical errors in the record as to when final judgment was rendered and the case disposed of. Pursuant to our supervisory powers; see Practice Book § 60-2; we direct the court to order a rectification of those clerical errors in the trial court file so that the file conforms to the facts and the law.

The judgment is affirmed and the case is remanded with direction to order a rectification of the trial court record in accordance with this opinion.

In this opinion the other judges concurred.

[1] Practice Book § 2-42 provides in relevant part: "(a) If there is a disciplinary proceeding pending against a lawyer . . . and the grievance panel, the reviewing committee, the statewide grievance committee or the disciplinary counsel believes that the lawyer poses a substantial threat of irreparable harm to his or her clients or to prospective clients . . . the panel or committee shall so advise the disciplinary counsel. The disciplinary counsel shall, upon being so advised or upon his or her own belief, apply to the court for an order of interim suspension. The disciplinary counsel shall provide the lawyer with notice that an application for interim suspension has been filed and that a hearing will be held on such application.

"(b) The court, after hearing, pending final disposition of the disciplinary proceeding, may, if it finds that the lawyer poses a substantial threat of irreparable harm to his or her clients or to prospective clients, enter an order of interim suspension, or may order such other interim action as deemed appropriate. Thereafter, upon good cause shown, the court may, in the interest of justice, set aside or modify the interim suspension or other order entered pursuant hereto. . . ."

[2] The defendant refused to comply with the Statewide Grievance Committee's request for information pertaining to his trust accounts. The plaintiff filed a motion for contempt to which the defendant objected on the basis of the constitutional privilege against self-incrimination. On March 21, 2012, the court overruled the defendant's objection and ordered him to produce the documents necessary to conduct the audit. The defendant filed a notice of intent to appeal the court's ruling on April 4, 2012, and a motion for stay of the court's order relative to the trust accounting. The court denied the

defendant's motion for stay on June 5, 2012. See Practice Book § 61-11 (b) (attorney disciplinary orders are not automatically stayed during appeal).

[3] Practice Book § 2-40 (a) provides in relevant part: "The clerk of the superior court location in this state in which an attorney is convicted of a serious crime as defined herein shall transmit, immediately upon the imposition of sentence, a certificate of the conviction to the disciplinary counsel and to the statewide grievance committee. The attorney shall also notify the disciplinary counsel in writing of his or her conviction. The disciplinary counsel or designee shall, pursuant to Section 2-47, file a presentment against the attorney predicated upon the conviction. . . . The filing of a presentment shall be discretionary with the disciplinary counsel where the offense for which the attorney has been convicted carries a maximum penalty of a period of incarceration of one year or less."

[4] Practice Book § 2-47 provides in relevant part: "(a) Presentment of attorneys for misconduct, whether or not the misconduct occurred in the actual presence of the court, shall be made by written complaint of the disciplinary counsel. Service of the complaint shall be made as in civil actions. . . . [A] hearing on the merits of the complaint shall be held within sixty days of the date the complaint was filed with the court. At such hearing, the respondent shall have the right to be heard in his or her own defense and by witnesses and counsel. After such hearing the court shall render a judgment dismissing the complaint or imposing discipline as follows: reprimand, suspension for a period of time, disbarment or such other discipline as the court deems appropriate. This may include conditions to be fulfilled by the attorney before he or she may apply for readmission or reinstatement. . . .

"(b) The sole issue to be determined in a disciplinary proceeding predicated upon conviction of a felony, any larceny or crime for which the lawyer is sentenced to a term of incarceration or for which a suspended period of incarceration is imposed shall be the extent of the final discipline to be imposed."

[5] On April 11, 2012, in the judicial district of Stamford, the defendant pleaded guilty to the charge of larceny in the first degree in violation of General Statutes § 53a-122 (a) (2). He was given a suspended sentence of five years imprisonment.

[6] The defendant's letter was addressed to the Superior Court for the judicial district of New Haven and stated: "In accordance with the provisions of Superior Court Rule § 2-52 I do hereby submit my resignation as an attorney admitted to the Connecticut Bar. This action supersedes my letter dated April 11, 2012." We are unable to find in the record the April 11, 2012 letter to which the defendant referred.

[7] In its May 8, 2013 order the court stated: "On November 21, 2012 the court accepted the [defendant's] resignation from the practice of law. The [plaintiff] requested the [defendant] be prohibited from applying for reinstatement to the Connecticut [b]ar for a period of twelve years. The [defendant] argues this court has no jurisdiction over his applying for reinstatement and therefore no time limit should be imposed. The [defendant] is [seventy-five] years old.

"This court does have jurisdiction over this matter. By way of background the [defendant] admitted the misappropriation of [a] client['s] funds in the approximate amount of $800,000. He entered a guilty plea to larceny in the first degree in Stamford Superior Court in 2012. He was not sentenced to prison. He received a suspended sentence.

"Subsequent to his conviction in Stamford, he was arrested for misappropriating $175,000 from another client. This larceny in the first degree charge is currently pending against the [defendant] in Milford Superior Court.

"[The defendant] is a convicted felon who stole approximately $800,000 from a client in Stamford. There has been a probable cause finding that he stole another $175,000 from a client in Milford.

"He has intentionally misappropriated substantial amounts of his clients' funds for his own purposes. He has caused substantial injury to his clients. He is very fortunate, as of now, not to be incarcerated. He poses a substantial threat of harm to any prospective client.

"The [defendant] is not eligible to apply for readmission to the Connecticut [b]ar for a period of twelve years from April 29, 2013. He will be subject to the imposition of such conditions upon his application for reinstatement as may be deemed appropriate at that time."

[8] Subsequent to the November 21, 2012 proceeding during which the court accepted the defendant's resignation, the clerk's office issued the following order. "After hearing had, and in accordance with Practice Book § 2-52, I hereby find that Benson A. Snaider, Juris No. 371721, has knowingly and

voluntarily resigned from the bar of the State of Connecticut. I hereby accept his resignation.

"The court hereby retains jurisdiction concerning this matter."

The defendant attempts to bolster his final judgment argument by pointing out that on November 21, 2012, after the court accepted his unconditioned resignation, a notice from the court issued on a preprinted form entitled "FINAL JUDGMENT." The notice states, in part: "Judgment without trial for . . . Other (JWT)." The notice indicates that it was sent to counsel on "12/21/12."

Our review of the electronic file indicates that the signature at the bottom of the page entitled Final Judgment is illegible and none of the boxes indicating who signed the form is checked, i.e., assistant clerk, court officer, caseflow coordinator. See part IV of this opinion.

[9] Practice Book (2012) § 2-52 entitled "Resignation of Attorney," provides in relevant part: "(a) The superior court may, under the procedure provided herein, permit the resignation of an attorney whose conduct is the subject of investigation by a grievance panel, a reviewing committee or the statewide grievance committee or against whom a presentment for misconduct under Section 2-47 is pending.

"(b) Such resignation shall be in writing signed by the attorney, and filed . . . with the clerk of the superior court in the judicial district in which the attorney resides . . . . Such resignation shall not become effective until accepted by the court after a hearing following a report by the statewide grievance committee, whether or not the attorney seeking to resign shall, in the resignation, waive the privilege of applying for readmission to the bar at any future time."

[10] The defendant also seeks to strengthen his argument by referring to the 2013 amendment to § 2-52, specifically the addition of Practice Book (2013) § 2-52 (e), which provides in relevant part: "Acceptance by the court of an attorney's resignation from the bar without the waiver of the right to apply for readmission to the bar at any time in the future shall not be a bar to any other disciplinary proceedings based on conduct occurring before or after the acceptance of the attorney's resignation."

In response to this argument, the plaintiff contends that the additional language does not change the court's ability to impose sanctions on an attorney who has resigned from the bar in 2012. The plaintiff draws our attention to the official commentary to Practice Book (2013) § 2-52 (e), which provides in relevant part: "The amendments . . . require the court to make a finding of misconduct before it can accept the resignation. This amendment is necessary to assure that lawyers who resign and waive here in Connecticut will be subject to a finding of misconduct, which will be useful to disciplinary authorities in other jurisdictions where the attorney is admitted or may seek admission. Currently, some states do not consider a resignation and waiver without a finding of misconduct as the imposition of discipline. As a result, attorneys who have resigned and waived here in the face of allegations of very serious misconduct have been allowed to retain their licenses in other states, such as New York."

[11] During argument to the trial court on April 29, 2013, counsel for the defendant stated: "[The defendant] would like to be able to call himself a lawyer at some point before he dies . . . ."

[12] The defendant's jurisdictional argument appears rooted in his dissatisfaction with the court's prohibiting him from applying for readmission to the bar for a period of twelve years. The defendant seems to argue that he exercised the option to resign from the bar and that is discipline enough. The record suggests that the defendant first was willing to resign from the bar with the option to apply for readmission after five years. After the plaintiff opposed the brevity of five years and argued for a period of twelve years before the defendant could apply for readmission, the defendant withdrew his offer to resign and submitted a letter of resignation from the bar without conditions. The defendant also had been arrested and charged with larceny in the first degree with respect to the misappropriation of the funds of a second client. Following his resignation from the bar, in addition to claiming that the court lacked jurisdiction over him to impose discipline, the defendant asked, due to his age, that the court order that he be permitted to apply for readmission to the bar after five years. The defendant's real concern therefore appears to have been, not the court's jurisdiction, but the length of the discipline the court could impose.

[13] The American Bar Association has promulgated standards for the imposition of sanctions. See *Burton* v. *Mottolese*, supra, 267 Conn. 55. "[A]fter a finding of misconduct, a court should consider: (1) the nature of the duty

violated; (2) the attorney's mental state; (3) the potential or actual injury stemming from the attorney's misconduct; and (4) the existence of aggravating or mitigating factors. A.B.A Standards for Imposing Lawyer Sanctions (1986) standard 3.0, p. 25 . . . ." *Burton* v. *Mottolese*, supra, 55.

The aggravating factors include: "(a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; [and] (j) indifference to making restitution." (Internal quotation marks omitted.) Id.

The mitigating factors include: "(a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical or mental disability or impairment; (i) delay in disciplinary proceedings; (j) interim rehabilitation; (k) imposition of other penalties or sanctions; (l) remorse; [and] (m) remoteness of prior offenses." (Internal quotation marks omitted.) Id., 55–56.

[14] At the time of oral argument in this court, counsel for the defendant represented that the defendant was incarcerated. The defendant pleaded guilty to larceny in the first degree in violation of General Statutes § 53a-122 (a) (2), and was sentenced to a term of eight years imprisonment, execution suspended after two years, and five years of probation. This court may take judicial notice of a case involving the same parties. See, e.g., *State* v. *Bunkley*, 202 Conn. 629, 648, 522 A.2d 795 (1987).

[15] The defendant has asked this court to consider his representation that he practiced law for fifty years without discipline and was an attorney trial referee. His plea is unavailing and unwarranted in that it is he who chose to take his clients' funds near the end of his legal career, which resulted in ending his professional life in disrepute. Moreover, substantial legal experience is an aggravating, not a mitigating, factor to be considered. See footnote 13 of this opinion.